36   507
55   257
36   507
57   203

SECURITY COMPANY OF HARTFORD, CONNECTICUT, AP-
PELLANT, v. BENJAMIN F. EYER ET AL., APPELLEES.

FILED MARCH 29, 1893.   No. 4788.

1. **Negotiable Instruments:** VALIDITY OF PROVISIONS FOR
PAYMENT OF ATTORNEY'S FEE. Following the repeated de-
cisions of this court it was *held*, that a provision in a note exe-
cuted since June 1, 1879, the date of the taking effect of the
act repealing the attorney fee law, stipulating for the payment
of an attorney's fee to the plaintiff for instituting and prose-
cuting a suit on the note, is invalid.

2. ———: ———: FORECLOSURE OF MORTGAGE: CONFLICT OF
LAWS: LEX FORI.   B. F. E., a resident of Nebraska, for the
purpose of procuring a loan of money, on July 9, 1886, exe-
cuted a note in this state, and secured the payment thereof by
mortgage on real property within the state.   The payee and
mortgagee was a resident of Iowa, but the papers were executed
and delivered, and the money was paid to the borrower, in this
state.   The note, by its terms, was payable in New York City,
and contained a provision to the effect that in case an action is
commenced to foreclose the mortgage securing the same, plaint-
iff should be allowed by the court in the decree an attorney's
fee of $70, which provision was valid and binding in the state
of Iowa.   The note and mortgage each contained a clause ex-
pressly providing that " they are made and executed under and
are in all respects to be construed by the laws of the state of
Iowa."   *Held*, In a suit to foreclose the mortgage, that the law
of the place of the forum governs the application of the remedy,
such as the recovery of costs, etc., and that the said provision in
the note for attorneys' fees, being contrary to the settled law of
this state, will not be enforced.

3. **Mortgage Foreclosure:** CONTRACT: INTERPRETATION.   The
contract set out at length in the opinion construed, and *held* that
the promise of T. D. and the bank to pay off and discharge the
incumbrances on the real estate covered by plaintiff's mortgage
was not absolute, but conditional.

4. ———: DEFICIENCY JUDGMENT.   *Held*, Under the pleadings and
proofs in the case, that plaintiff is not entitled to a deficiency
judgment against the said T. D. and the bank.

APPEAL from the district court of Holt county. Heard below before KINKAID, J.

*Breckenridge, Breckenridge & Crofoot,* for appellant:

A promise in a note to pay attorneys' fees is valid and may be enforced where suit is brought upon default in payment. (*Harvey v. Baldwin,* 24 N. E. Rep. [Ind.], 347; *Reisterer v. Carpenter,* Id., 371; *Smock v. Ripley,* 62 Ind., 81; *Ogborn v. Eliason,* 77 Id., 394; *Smith v. Silvers,* 32 Id., 321; *Farmers & Merchants National Bank v. Barton,* 21 Ill. App., 403; *Barry v. Guild,* 28 Id., 50; *Wood v. Winship Machine Co.,* 83 Ala., 424; *Williams v. Flowers,* 7 So. Rep. [Ala.], 439; *Boutwell v. Steiner,* 5 Am. St. Rep. [Ala.], 376; *Peyser v. Cole,* 4 Pac. Rep. [Ore.], 520; *Wilson Sewing Machine Co. v. Moreno,* 6 Sawyer [U. S.], 35; *Bank of British N. A. v. Ellis,* Id., 96; *Miner v. Paris Exchange Bank,* 53 Tex., 561; *Washington v. First National Bank of Denton,* 64 Id., 4; *Md. Fertilizer & Mfg. Co. v. Newman,* 45 Am. Rep. [Md.], 750; *Bowie v. Hall,* 69 Md., 433.) A reasonable attorney's fee may be stipulated for in a mortgage and collected in case of foreclosure. (*Casler v. Byers,* 22 N. E. Rep. [Ill.], 507; *Telford v. Garrels,* 24 Id. [Ill.], 573; *McIntire v. Yates,* 104 Ill., 492; *Clawson v. Munson,* 55 Id., 394; *Succession and Community of Duhe,* 6 So. Rep. [La.], 502; *Levy v. Beasley,* Id. [La.], 630; *Alden v. Pryal,* 60 Cal., 215; *Moran v. Gardemeyer,* 23 Pac. Rep. [Cal.], 6; *Snow v. Warwick,* 20 Atl. Rep. [R. I.], 94; *Rice v. Cribb,* 12 Wis., 198; *Hitchcock v. Merrick,* 15 Id., 578; *Killips v. Stephens,* 40 N. W. Rep. [Wis.], 652; *Williams v. Meeker,* 29 Ia., 292; *McGill v. Griffin,* 32 Id., 445; *McIntire v. Cagley,* 37 Id., 676; *Davidson v. Vorse,* 52 Id., 384; *Cox v. Smith,* 1 Nev., 161; *McLane v. Abrams,* 2 Id., 199; *Rickards v. Hutchinson,* 18 Id., 215; *American Mortgage Company v. Downing,* 17 Fed. Rep., 660.) A creditor taking security of any kind for

debt may include a stipulation that he may recover with it the reasonable expenses for collection, including attorney's commission. (*McAllister's Appeal*, 59 Pa. St., 204; *Imler v. Imler*, 94 Id., 372; *Huling v. Drexell*, 7 Watts [Pa.], 126.)

*H. M. Uttley, contra:*

The provision of the contract for the payment of attorneys' fees is void. (*Dow v. Updike*, 11 Neb., 95; *Hardy v. Miller*, Id., 395; *Otoe County v. Brown*, 16 Id., 395; *Bond v. Dolby*, 17 Id., 493; *Hand v. Phillips*, 18 Id., 593; *Winkler v. Roeder*, 23 Id., 706; *Bullock v. Taylor*, 39 Mich., 140; *Myer v. Hart*, 40 Id., 522; *First National Bank of Trenton v. Gay*, 63 Mo., 33; *Ayrey v. Fearnsides*, 4 Mees. & W. [Eng.], 168; *Smith v. Nightingale*, 2 Stark. [Eng.] 375; *Bolton v. Dugdale*, 4 B. & Ad. [Eng.], 619; *Smith v. Mercer*, 1 Marsh. [Eng.], 253; *Clarke v. Percival*, 2 B. & Ad. [Eng.], 660; 1 Parsons, Notes & Bills, 37; *Read v. McNulty*, 12 Rich. L. R. [S. Car.], 445; *Woods v. North*, 84 Pa. St., 407; *Witherspoon v. Musselman*, 14 Bush [Ky.], 214; *Thomasson v. Townsend*, 10 Id., 114; *Gaar v. Louisville Banking Co.*, 11 Id., 189; *Smith v. Shelden*, 35 Mich., 42; *Merchants National Bank v. Sevier*, 14 Fed. Rep. [Ark.], 662; *Shelton v. Gill*, 11 O., 417; *Martin v. Trustees Belmont Bank of St. Clairsville*, 13 Id., 250; *Jones v. Radatz*, 11 Cent. L. J. [Minn.], 513; ·*Loudon v. Taxing District*, 104 U. S., 771; *State v. Taylor*, 10 O., 381.)

NORVAL, J.

This action was brought by the plaintiff and appellant in the district court of Holt county for the foreclosure of a mortgage on the N. W. ¼ of section 15, town 28, range 13 west, executed by Benjamin F. Eyer and Hatta S. Eyer, his wife, on the 9th day of July, 1886, to secure the payment of a bond or note given by said Benjamin F.,

calling for the sum of $700 with seven per cent interest from date thereof. To the action, C. H. Toncray, George W. E. Dorsey, the Farmers & Merchants National Bank of Fremont, and others were made defendants. A decree of foreclosure was rendered in an amount satisfactory to the plaintiff.

Two questions are raised by the appeal:

1. Was the plaintiff entitled to an allowance of an attorney's fee and to have the same taxed as costs in the case?

2. Did the court below err in holding that Toncray, Dorsey, and the bank were not personally liable to the plaintiff for the payment of the mortgage debt?

The note and mortgage each contained a provision to the effect that, in case an action is commenced to foreclose the mortgage, the plaintiff shall be allowed by the court in the decree an attorney's fee of $70.

Counsel for plaintiff, in the brief, cite a long line of decisions from the courts of last resort of several of our sister states which hold that a stipulation in a mortgage like the one before us for the payment of an attorney's fee, in the event of an action being instituted to foreclose the same, is valid and binding. This court in repeated decisions has held, and it is now the settled law of this state, that stipulations of this character found in contracts executed since June 1, 1879, the date of the taking effect of the act repealing the attorneys' fees statutes, are invalid and will not be enforced. (*Dow v. Updike*, 11 Neb., 95; *Hardy v. Miller*, Id., 395; *Otoe Co. v. Brown*, 16 Id., 395; *Winkler v. Roeder*, 23 Id., 706.) The question being no longer an open one we shall not now attempt to examine the subject anew, or to review the authorities which hold a different view from the one enunciated by this court in the cases cited above. If the rule is changed in this state it should be by statute, and not by judicial decision.

But it is contended by counsel for plaintiff that the note and mortgage were executed in the state of Iowa and must

be enforced according to the laws of that state, which au-
thorize the allowance of attorney fees in foreclosure cases,
where such fees are contracted by the parties.    The record
shows that when the mortgage was executed the mortgagee,
Clarence K. Hesse, was a resident of Iowa and that the
mortgagors resided in this state, on the land covered by the
mortgage.    Burnham, Tulleys & Co., of Council Bluffs,
were the agents of the mortgagee and negotiated the loan
for him through their sub-agent, John L. Pierce, a resident
of Norfolk, this state.    The papers were drawn in Iowa
and sent here for execution.    The note is headed at Coun-
cil Bluffs and purports to have been dated and signed there.
By its terms it is payable at the Banking House of Gilman,
Son & Co., New York City.    The uncontradicted testimony
shows that the papers were executed and delivered in Ne-
braska.    The mortgage was acknowledged in Holt county
on January 9, 1886, and was filed for record in the fore-
noon of the same day, so it could not have been delivered in
Iowa before it was placed on record.    It also appears that
the money was paid on the loan to the borrower in Ne-
braska through said John L. Pierce.

Bishop on Contracts, sec. 1389, says that " When the
preliminaries of a contract and its formal execution have
occurred partly in each of two or more states, its place of
making is, as a sort of general rule, that at which, by de-
livery or otherwise, it first becomes a contract.    For ex-
ample, since ordinarily it is delivery which gives effect to
the writing, a contract is commonly deemed to have been
made in the state where the delivery took place, without
reference to where it was written and signed.    But in many
cases this rule is inadequate, or its pointings are not readily
understood; then the court will look into the preliminaries,
the surroundings of the parties, their domicile, the words,
the nature of the contracting, and the like, from which
combined whole it will deduce the result."

There can be no doubt, under the rule just stated, that

the evidence fixes Nebraska as the *locus contractus*. The contract having been made in this state, if that fact alone is to be considered, it is clear that the agreement to pay an attorney's fee would have to be held invalid, for, as a general rule, where there is no stipulation to the contrary, the *lex loci contractus* governs. Of course it is competent for parties to contract with reference to the law of a particular place. Thus, where the place of performance of a contract is different from the place of making, the parties may stipulate that the contract shall be governed by the law of either place. Although New York city, in the state of New York, is mentioned in the note as the place of payment, the contract is not to be construed with reference to the law of that state, for the obvious reason there is no averment in the petition that the parties agreed or intended that the place of payment was in the state of New York, nor is the statute of that state pleaded. The note and mortgage both contained a printed clause expressly providing that " they are made and executed under and are in all respects to be construed by the laws of the state of Iowa."

It is urged that under the quoted stipulation the decree of the district court should have provided for an attorney's fee, in accordance with the contract of the parties, since the laws of Iowa, at the time of the making of the note and mortgage, allow attorneys' fees, when stipulated for in the contract. The books abound with decisions to the effect that parties may stipulate that either the law of the place of making the contract, or the place of performance, shall be applied by the courts in the construction of the contract and that such stipulation is binding upon the parties ; but no case has been cited by counsel for appellant, nor have we been able to find any, which holds that a provision in a contract like the one before us, providing that it shall be construed by the laws of a state other than that of the one where the contract is made, or in which it is to be performed, will govern and control. We shall

not now decide the force and effect of such provision, since its determination is not essential to a proper disposition of the question under consideration; but for the purposes of this case we shall assume that the mortgage was an Iowa contract and the law of that state governs as to its construction. But it by no means follows, because the clause in the note and mortgage in regard to attorneys' fees is valid in Iowa, that the stipulation can be enforced in this state. Attorneys' fees, in states where they are allowed by the court to the successful party, are in the nature of costs and are taxed and treated as such. They are no part of the judgment proper. (*Rich v. Stretch*, 4 Neb., 186; *Hendrix v. Rieman*, 6 Id., 516; *Heard v. Dubuque County Bank*, 8 Id., 10; *Rosa v. Doggett*, Id., 51; *Hand v. Phillips*, 18 Id., 593; *State v. Boyd*, 52 N. W. Rep. [Ia.], 513.)

In general, costs are recoverable only by force of some statutory provisions, and the law of the place of the forum in respect to costs is applied. The law in force at the place the contract is made does not govern costs. (*Commercial National Bank of Ogden v. Davidson*, 22 Pac. Rep. [Ore.], 517.) The case cited was an action brought in one of the circuit courts of the state of Oregon to foreclose a chattel mortgage on property within said state, given to secure a note made out of that state. The note contained a clause that "if not paid at maturity, ten per cent additional as costs of collection" should be recovered, which provision was valid and enforcible in the state where the note was executed. The court held that the *lex fori* governs the application of the remedy, and that the stipulation for attorneys' fees, being contrary to the public policy of the state of Oregon, would not be enforced by the courts of that state. The following quotation is from the opinion in the case: "As a general rule, the law of the place where contracts merely personal are made governs as to their nature, obligation, and construction. But I do not think that rule

36

applies to an extraneous agreement, the obligation of which does not arise until a remedy is sought upon the contract, to which it is only auxiliary.    In regard to such agreements, the law of the place where they are attempted to be enforced, I should suppose, would prevail.    This agreement was to pay the additional percentage as costs for collection of the note, and if the courts where the note was executed would have enforced the agreement, it does not follow that the courts of another jurisdiction are bound to do so.    The effect of the agreement was to provide for an increase of costs, which are only incidental to the judgment, and the allowance of which must necessarily depend upon the law of the forum.    A stipulation in a note made in Utah territory, providing that in an action on the note the plaintiff, in case of a recovery, should be entitled to double costs, might be considered valid under the laws of that territory, and enforcible in its courts; but that certainly would not render it incumbent upon the courts of this state, in an action upon such note, to award double costs."

In our opinion, the clause in the note and mortgage in the case at bar, relating to attorneys' fees, is invalid, and the court below did right in not enforcing it.

As to the remaining question involved in this appeal, the record before us shows that a few days after the making and recording of the mortgage in suit the mortgagors conveyed the land therein described, and other lands, by warranty deed to one Augusta Elwood; that on August 19, 1887, said Augusta Elwood and her husband, by warranty deed, conveyed the land to George Burke, who by quit-claim deed conveyed the property to George W. E. Dorsey on March 29, 1888, and that Elwood and wife also executed a quitclaim deed to the real estate to C. H. Toncray on April 12, 1889.    It further appears that the said Elwoods executed and delivered mortgages upon the same lands as follows: On March 1st, 1887, two mortgages to the Farmers Loan & Trust Company to secure the sums

of $24,000 and $9,460 respectively; on April 21, 1887, a mortgage to the Oregon Horse & Cattle Company for the sum of $18,023; on April 28, 1887, a mortgage to C. H. Toncray for $11,516.70, and on July 2, 1888, another mortgage to Toncray for $8,000.

On the 6th day of April, 1888, the following contract was entered into between S. H. Elwood and Toncray, Dorsey, and the bank:

"This agreement, made this 6th day of April, 1888, by and between C. H. Toncray, George W. E. Dorsey, the Farmers & Merchants National Bank, and S. H. Elwood, witnesseth: That whereas said Elwood has been engaged in various deals for several years, in which deals said Elwood has borrowed money, and said Toncray and Dorsey have settled and assumed the same, and whereas said Elwood has given various mortgages, both on real and personal property, to said Toncray and said bank, and whereas said Elwood has purchased large quantities of land for said Toncray and Dorsey in Holt county, for which lands and services said Elwood was to receive all sums over the mortgages on said lands for what said lands were sold:

"Now, this agreement witnesseth, that said Elwood hereby releases said Dorsey and Toncray from any and all claims by reason of such purchases, and from all claims and demands of whatsoever kind and description up to this date, and said Toncray, Dorsey, and said bank agree to, and do hereby, release said Elwood, and said Elwood's wife, from any and all claims, notes, demands of any kind or nature, except one note hereafter stated, now due them, or either of them, and agree to deed to said Elwood his home place, consisting of seven hundred and twenty acres, and to clear the same from all incumbrances out of the proceeds of the last three quarter sections purchased by Elwood, when the money shall be received therefrom.

"And said Toncray, Dorsey, and said bank hereby re-

lease, sell, and make over to said Elwood all the cattle, horses, and agricultural implements on said home place, or handled on said place, except 167 steers, which said Elwood agrees to handle for said Toncray without charge for his personal supervision. The home place above described, being the north half of section 22, and the northwest quarter of the southwest quarter of section 23, and the northwest quarter of section 15, and the south half of the northeast quarter of section 10, and the southwest quarter of the southwest quarter of section 11, township 28, range 13, in Holt county, Nebraska.

"The note excepted from this agreement is a note of $12,000, made by Mrs. Elwood in December or November, 1888, but said Elwood may pay said note by services in securing land on the same terms as heretofore. This agreement being a full and complete settlement of all claims, demands, notes, bills, or accounts existing between the parties hereto, or any claims of any kind or nature, and all evidences of debt are to be surrendered and cancelled."

This contract was duly signed by the parties therein named and was afterwards, on the 25th day of June, 1888, duly recorded.

Plaintiff insists that by virtue of the foregoing agreement he was entitled to a finding that Toncray, Dorsey, and the bank were liable for the payment of the amount due on its mortgage. The allegations in the petition under which plaintiff bases its claim to a deficiency judgment against the three parties in case the mortgaged premises do not bring enough to pay the mortgage debt are to the effect that Toncray, Dorsey, Elwood, and the bank, subsequent to the execution of the mortgage in said petition described, acquired title to the premises, or some interest therein, and as a part of the purchase price thereof, and in further consideration of some agreement between themselves, the said Toncray, Dorsey, and the bank agreed to pay all liens

upon the property, including the debt secured by plaintiff's mortgage.

There is absolutely no evidence in the bill of exceptions conducing to prove that either Toncray, Dorsey, or the bank assumed the payment of the mortgage as part consideration for the land. Neither of them at the time of making the agreement was purchasing the land, but, on the other hand, the legal title thereto was then in Dorsey, and the three parties, by the agreement under consideration, obligated themselves to deed certain lands, including the 160 acres herein involved, to Elwood, and upon certain conditions they promised to pay the incumbrances thereon. It does not appear that the quarter section has ever been conveyed to Elwood.

Upon the trial, some oral testimony was introduced tending to show that it was not within the contemplation of the parties, when the agreement was made, to include plaintiff's mortgage. Whatever may have been the actual intention of the parties in that respect, the language used is certainly broad enough to include this incumbrance.

It will be observed, however, that the agreement to pay the incumbrances on the property is not absolute, but conditional. The provision of the contract is that said Toncray, Dorsey, and said bank agree to and do hereby release said Elwood "from any and all claims, notes, demands of any kind or nature, except one note hereafter stated, now due them or either of them, and agree to deed said Elwood his home place, consisting of 720 acres, and to clear the same from all incumbrances *out of the proceeds of the last three quarter sections purchased by Elwood when the money shall be received therefrom.*" The parties only agreed to pay the liens from money thereafter to be derived from the sale of certain lands. There is no averment in the petition, nor is there a particle of proof tending to establish, that any part of the three quarter sections has been sold. For these and other reasons that might be stated these parties

are not as yet liable under the terms of said contract to pay the mortgage debt to plaintiff, and no recovery can be had against them thereunder. The decree of the court below is

AFFIRMED.

THE other judges concur.