ABRAHAM L. REED, APPELLEE, v. AMERICAN BONDING COMPANY, APPELLANT.

FILED JANUARY 21, 1918. No. 19757.

1. **Insurance: LARCENY: QUESTION FOR JURY.** Under the contract sued upon, "the mere disappearance of an article" is not sufficient evidence of larceny; but, when other circumstances are in evidence indicating larceny, it may become a question for the jury.

2. ———: **COSTS: ATTORNEY'S FEE.** Our former decisions, that an attorney's fee may be allowed as costs in a judgment upon an insurance policy, although the contract was made before the act of 1913, are adhered to.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Affirmed.*

*Stout, Rose & Wells,* for appellant.

*Morsman, Maxwell & Crossman, contra.*

SEDGWICK, J.

The policy upon which this action was brought insured against the direct loss of the property described "by burglary, theft, or larceny." . The plaintiff alleged that the diamond ring insured was stolen, and recovered a verdict and judgment in the district court for Douglas county for the value thereof.

1. The defendant contends that the evidence that the ring was stolen was not sufficient to justify the court in submitting that question to the jury. The evidence is not conflicting, and established that the plaintiff's wife wore the ring the evening of May 28, 1912,

102 Neb.—8

and at night placed it in a jewel box with other jewelry in her room on the second floor of the residence. The box was provided with a lock, and she left the key in the lock. She had no occasion to wear the ring again for something over a month, and then discovered that it had been taken from the box. In the meantime a servant girl who had been in her employ for about two weeks had suddenly left her upon one day's notice, and, although she had mailed a postal card from Salt Lake City, Utah, to another girl in the plaintiff's employ, it gave no information as to her intentions for the future, and she has not been located since. This girl had had the care of the room in which the ring was left, and was in that room in the absence of the plaintiff or his wife. She had no money when she left, and borrowed a dollar to pay for taking her trunk to the station, and was paid the remainder of her wages, $13.60, by the plaintiff's check, which was cashed at a drug store. She had informed the plaintiff's wife that she intended to go to Los Angeles. The defendant company and the police were immediately notified when the loss of the ring was discovered, and, although search was made in the pawn shops of the city, the ring was not discovered. The policy contained the provision: "The mere disappearance of an article or money shall not be deemed sufficient evidence of its loss by burglary, theft, or larceny."

The defendant relies upon *Duschenes v. National Surety Co.*, 139 N. Y. Supp. 881, and other similar cases. In that case the provision of the policy relied upon was: "The assured shall also produce direct and affirmative evidence that the loss of the article or articles for which claim is made was due to the commission of a burglary, theft, or larceny; the disappearance of such article or articles not to be deemed such evidence." The evidence was not entirely identical with that in the case at bar, but it was quite similar, and the court said: "No direct or affirmative evidence

has been presented of any theft or larceny.    \*    \*    \*
In order to protect itself from claims under the policy
for loss of the articles covered by the policy by reason
of some other cause than burglary, theft, or larceny,
the company has provided that the insured must pro-
duce, not circumstantial, but direct and affirmative,
evidence of the wrong''—and decided that the evidence
was not sufficient to support a verdict.

Under a policy containing the same language, the
supreme court of Pennsylvania held that quite similar
evidence would support the finding that the article
was stolen.    The court said: ''This contention gives
to the words 'direct and affirmative evidence' a mean-
ing so severely technical that, if this meaning alone can
be given them, a policy containing the provision we
have here would avail the assured only in the rarest
and most exceptional cases, so exceptional that the
average person would hardly think the contingency
in which the policy could operate worth guarding
against.    \*    \*    \*    To limit the assured's right to re-
covery to cases where the *corpus delicti* can be proved
by direct testimony, that is, by the testimony of wit-
nesses who saw the actual taking, would make the
policy next to valueless.''    The court refused to con-
strue the words ''direct and affirmative evidence'' lit-
erally, as it could not be supposed that the parties
to the contract so understood them. *Miller v. Massa-
chusetts Bonding & Ins. Co.,* 247 Pa. St. 182.

These words are not in the contract under consider-
ation.    Indeed, the language we have to construe is
much more liberal.    It is true that if larceny, which
is the gist of the action is sufficiently established by
this evidence, the company's risk is a hazardous one.
Such a contract would make it easy to manufacture
a case against the company.    The husband might re-
move the ring and secrete it until the litigation was
over, and the wife could then in good faith make the
same proof that she has made in this case.    The ques-

tion is, therefore, a difficult one. The company may, if it desires, assume such risks as are here indicated, and, to hold that under this contract it has done so, presents to our minds the less difficulty than to hold otherwise. The husband was a witness in the case and submitted to cross-examination, and his evidence seems frank and fair, as does also the evidence of the wife. When, as in this case, the company selects for such insurance a family of high standing in the community, the insured being a man of well-known and unquestionable character, by so doing the risk is minimized. It seems more probable that both parties to this contract understood the difficulties in making proof of larceny in many cases, and that proof of the facts and circumstances from which larceny might justly be inferred, in the absence of any evidence to the contrary, would require the matter submitted to the jury.

2. The defendant also complains of the allowance of an attorney's fee and taxing the same as costs against the defendant. The contract of insurance was made before the enactment of the statute of 1913 (Laws 1913, ch. 234, Rev. St. 1913, sec. 3212), providing for such attorney's fee, and it is earnestly insisted that to apply that statute to litigation upon contracts made before its enactment impairs the obligation of the contract. The reasons advanced for this contention on the part of the defendant, and the manner in which they are presented in this brief, might well cause us to hesitate if the question was an open one. *Nye-Schneider-Fowler Co. v. Bridges, Hoye & Co.*, 98 Neb. 863; *Ward v. Bankers Life Co.*, 99 Neb. 812. The decisions in these cases are based upon the proposition that the statute affects the remedy only, and to change the taxation of costs, even if it results in increasing the amount of costs, does not change the liability provided for in the contract, but only affects the method of enforcing that liability. If the contract is complied with, no costs are taxed against the company. If litigation becomes

necessary to determine the liability, the costs result from the litigation, and not from any construction of the contract. To suggest that the statute relates only to litigation upon contracts of a particular nature, and not litigation generally, presents a distinction of more or less difficulty; but that has already been determined in the cases above cited, a conclusion that we do not now feel at liberty to depart from.

The judgment of the district court is in harmony with these conclusions, and is

AFFIRMED.

LETTON and ROSE, JJ., not sitting.