MELVIN E. SMITH, APPELLANT AND CROSS-APPELLEE, V. FREMONT CONTRACT CARRIERS, INC., ET AL., APPELLEES AND CROSS-APPELLANTS.

358 N.W.2d 211

Filed November 9, 1984.　No. 84-145.

William G. Line of Kerrigan, Line & Martin, for appellant.

Walter E. Zink II of Baylor, Evnen, Curtiss, Grimit & Witt, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

The plaintiff employee has appealed from an award of the Nebraska Workmen's Compensation Court which denied him benefits for waiting time, attorney fees, and interest. The defendant employer and its insurer, Great West Casualty Company, have cross-appealed from the award generally, claiming that the injury which plaintiff suffered was not compensable.

On January 11, 1983, the plaintiff was a 54-year-old man employed by the defendant Fremont Contract Carriers, Inc., driving a tractor-trailer rig. While driving on an interstate highway in Indiana, his trailer brakes locked, the rig went off the road, he applied the tractor brakes, and they locked. He then lost control of the unit; it moved across the median, over a large sign, past the southbound lanes, and came to rest in a ditch. A short time after the accident, the plaintiff noticed that he could not put change back in his pocket, he had difficulty putting money in the coffee machine, he could not hold a cup of coffee, and he had a "lost" feeling. His condition remained about the same for the next couple of days. By Saturday, after the plaintiff had returned home, he was taken to the hospital in Fremont, and then to Methodist Hospital in Omaha the same evening. During his stay in the hospital, he was diagnosed as

having suffered a cerebrovascular accident and was subjected to surgery to clean out his right carotid artery, which was causing paralysis and weakness of his left arm and hand.

After the defendants had refused to pay any compensation benefits, plaintiff filed a petition in the Workmen's Compensation Court. Following a hearing before Judge Vrana, an award was entered in favor of the plaintiff for benefits for disability and medical expenses. A rehearing before a three-judge panel was held at the request of the plaintiff because certain items of medical expense, by inadvertence, were not offered in evidence by the plaintiff at the first hearing. An award on rehearing was entered on January 24, 1984, which in effect affirmed the original award, plus adding the items of expense originally omitted.

The plaintiff then filed a motion to amend the award to provide for penalty payments, attorney fees, and interest under the provisions of Neb. Rev. Stat. § 48-125 (Supp. 1983), which had been authorized by 1983 Neb. Laws, L.B. 18. The compensation court denied the request on three grounds: (1) L.B. 18, under which the plaintiff claimed these benefits, was not effective until August 26, 1983, after the accident, and those provisions were substantive in nature and therefore not applicable to this situation; (2) The plaintiff was not entitled to these benefits because a reasonable controversy existed; and (3) The court had no jurisdiction to entertain such a motion because, after rehearing, the compensation court may modify its award only for the purpose of correcting any ambiguity or clerical error as provided for in Neb. Rev. Stat. § 48-180 (Reissue 1978).

We agree with the compensation court as to its last contention. The Workmen's Compensation Court is a tribunal of limited and special jurisdiction and has only such authority as has been conferred on it by statute. 81 Am. Jur. 2d *Workmen's Compensation* § 80 (1976). A decree or award in a compensation case is final unless the petitioner seeking to reopen the case can bring the case within the terms of any statute to that effect.

We previously have referred to § 48-180, which provides for the modification of awards because of ambiguity or clerical

error. Neb. Rev. Stat. § 48-141 (Reissue 1978) permits the modification of an award under certain circumstances, not applicable here, because of the increase or decrease of disability.

In Nebraska, in civil cases, a court of general jurisdiction has inherent power to vacate or modify its own judgment during the term at which it was rendered. *Barney v. Platte Valley Public Power and Irrigation District*, 147 Neb. 375, 23 N.W.2d 335 (1946). This is a rule of the common law. *Schubach v. Hammer*, 117 Kan. 615, 232 P. 1041 (1925); 49 C.J.S. *Judgments* § 229 (1947). That rule does not apply to statutory tribunals such as the compensation court.

However, this does not end our inquiry. If the failure to award the benefits complained of by the plaintiff was either the breach of a mandatory duty or an abuse of discretion on the part of the compensation court, we must grant relief.

Under the provisions of § 48-125 existing at the date of this injury, there seems to be little doubt under our prior holdings but that the plaintiff was not entitled to either statutory penalties or attorney fees because of a sustainable finding of the existence of a reasonable controversy. *Savage v. Hensel Phelps Constr. Co.*, 208 Neb. 676, 305 N.W.2d 375 (1981). To the same effect, that section did not authorize the award of an attorney fee when the employee was the appellant. *Akins v. Happy Hour, Inc., supp. op.* 209 Neb. 748, 311 N.W.2d 518 (1981).

However, at the time of the rehearing, October 13, 1983, L.B. 18 was in effect. The question then becomes, Was this a substantive or procedural change so as to make the critical effective date the day of the accident or the day of the hearing?

We previously have decided this issue. *Western Newspaper Union v. Dee*, 108 Neb. 303, 187 N.W. 919 (1922), involved a situation where the employee was injured March 12, 1918. At that time, the predecessor of § 48-125, Rev. Stat. § 3666 (1913), provided only that compensation under the provisions of that "article shall be payable periodically in accordance with the methods of payment of the wages of the employe at the time of his injury or death." That law was amended by 1917 Neb. Laws, ch. 85, § 9½, p. 208, to provide for the 50-per centum penalty for all delinquent payments. It was not until a further amendment, 1919 Neb. Laws, ch. 91, § 4, p. 234, that § 3666

was to provide for the allowance of a reasonable attorney fee whenever the employer neglects to pay compensation for 30 days after the injury.

In *Western Newspaper Union, supra*, the trial court allowed an attorney fee. On appeal that award was upheld in the following language at 307, 187 N.W. at 921: "Though this provision was inserted by amendment after defendant was injured, the attorney's fee relates to the remedy and may be taxed as an item of costs in entering judgment on a claim that arose before the amendatory act was passed."

The authority of *Western Newspaper Union* was followed in *Solomon v. A. W. Farney, Inc.*, 136 Neb. 338, 286 N.W. 254 (1939), which held that a similar amendment affected procedure only and did not interfere with substantive rights. It cited with approval at 348, 286 N.W. at 260, the following syllabus point from *Western Newspaper Union*: " 'In a proceeding under the workmen's compensation act the allowance of a reasonable attorney's fee in the district court affects the remedy only and may be taxed as an item of costs, though the injury for which compensation is allowed occurred before the legislature authorized such a fee.' "

The final question in this regard is whether the rule of reasonable controversy, expressed in *Savage, supra*, is applicable to the expanded § 48-125.

L.B. 18, Eighty-eighth Session of the Nebraska Legislature, effective as of August 26, 1983, effected the following changes in the compensation provisions of § 48-125:

1. Added the bracketed language:

Whenever the employer refuses payment, or when the employer neglects to pay compensation for thirty days after injury, and proceedings are held before the compensation court, a reasonable attorney's fee shall be allowed the employee by the court [in all cases when the employee receives an award.]

2. Changed the following language (new language in brackets, deleted language emphasized):

*In the event* [If] the employer files an application for a rehearing before the compensation court *en banc* from an award of a judge of the compensation court and fails to

obtain any reduction in the amount of such award, the compensation court *sitting en banc may* [shall] allow the employee a reasonable attorney's fee to be taxed as costs against the employer for such rehearing, and the Supreme Court shall in like manner allow the employee a reasonable sum as attorney's fees for the proceedings in that court.

3. Added the following language:

If the employee files an application for a rehearing before the compensation court from an order of a judge of the compensation court denying an award and obtains an award or if the employee files an application for a rehearing before the compensation court from an award of a judge of the compensation court where the amount of compensation due is disputed and obtains an increase in the amount of such award, the compensation court may allow the employee a reasonable attorney's fee to be taxed as costs against the employer for such rehearing . . . .

(2) When an attorney's fee is allowed pursuant to this section, there shall further be assessed against the employer an amount of interest on the final award obtained . . . .

Plaintiff's argument seems to be that because of the addition of the language "in all cases when the employee receives an award," the reasonable controversy limitation does not apply. We do not agree. That language simply declares the obvious, i.e., no penalty certainly will be imposed if an award is not received. The reasonable controversy rule is still viable.

Finally, we would point out that the employee is not entitled to an attorney fee on rehearing under the new statutory provisions in any event. The section of L.B. 18 which allows for an attorney fee when the employee files the application for rehearing is pertinent only on rehearing "from an award of a judge of the compensation court where the amount of compensation due is disputed and [the employee] obtains an increase in the amount of such award." The amount of the medical expense to which the employee was entitled was not disputed. The employee simply neglected to present evidence of the amount of his claim. An employee may not withhold

evidence of medical expense at the first hearing, inadvertent though it might be, and then claim on rehearing that an attorney fee should be awarded because the award was increased.

The defendants' cross-appeal alleges that the compensation court erred in its finding of the requisite causal connection between the truck accident and the employee's subsequent stroke. The defendants argue that the plaintiff failed to demonstrate that his employment stress (1) contributed in some material and substantial degree to cause the stroke and (2) was greater than the stress of nonemployment life.

*Brokaw v. Robinson*, 183 Neb. 760, 764, 164 N.W.2d 461, 464-65 (1969), properly states an employee's burden of proof in stroke cases:

> [T]he plaintiff now has the burden of establishng [sic] by a preponderance of the evidence that exertion in his employment, in reasonable probability, contributed in some material and substantial degree to cause the injury. Obviously, the presence of a preexisting disease or condition would enhance the degree of proof required to establish that an injury arose out of and in the course of employment.

Accord *Newbanks v. Foursome Package & Bar, Inc.*, 201 Neb. 818, 272 N.W.2d 372 (1978). This court has further stated:

> "The exertion 'greater than nonemployment life' test has been applied by this court *only* in cases involving heart attacks allegedly caused by the activities or stress of employment. *Chrisman v. Greyhound Bus Lines, Inc., supra; Sellens v. Allen Products Co., Inc., supra; Hyatt v. Kay Windsor, Inc.*, 198 Neb. 580, 254 N.W.2d 92 (1977); *Newbanks v. Foursome Package & Bar, Inc.*, 201 Neb. 818, 272 N.W.2d 372 (1978); *Beck v. State*, 184 Neb. 477, 168 N.W.2d 532 (1969); *Brokaw v. Robinson*, 183 Neb. 760, 164 N.W.2d 461 (1969).
>
> "The rationale for the rule is discussed at some length in *Sellens, supra* at 509-11. Where a person suffers from a preexisting condition which he claims is aggravated by his employment, he has an increased burden of proving

causation. The exertion 'greater than nonemployment life' test is simply an application of the increased burden of proof required in preexisting condition cases to the unique problems of proving causation of a myocardial infarction. We find no reason to extend the rule to other cases where the proof of causation is not usually as complex." (Emphasis supplied.)
*Sandel v. Packaging Co. of America*, 211 Neb. 149, 154-55, 317 N.W.2d 910, 914 (1982), quoting *Engel v. Nebraska Methodist Hospital*, 209 Neb. 878, 312 N.W.2d 281 (1981). That rationale is logically applicable to stroke cases.

The facts indicate that the plaintiff employee suffered from "a severe right internal carotid arteriostenosis and moderate left internal arteriostenosis." It was the opinion of the neurosurgeon that the plaintiff's stroke was related to his preexisting condition. "He undoubtedly had a lack of blood supply to the right side of the brain related to his severe stenosis of the right internal carotid artery." It is this artery that was operated on and cleaned out.

Two doctors were presented with a hypothetical question involving the plaintiff's factual circumstances:

Q. Okay. Doctor, I'm going to give you a hypothetical question here from — assuming Mr. Smith was driving a truck on the interstate highway in January of 1983, that there was a brake failure on the truck, the brakes locked and that his truck went across the median taking out a sign, out of control, wound up in a barrow pit. Mr. Smith reporting that he was shaken up in the accident. That at the time he was going across the interstate he felt a terrific pain in his chest, like he felt the sign was coming through at him; that he was bounced around in the cab; and that at 5 o'clock — this incident occurring about 10 or 11 o'clock in the morning; and that at 5 o'clock the same day he was observed to have slurred speech, incoherent speech, kept repeating himself, his color was pale, he could not walk straight or — walk straight, in attempting to drink a cup of coffee, when he would keep reaching for his coffee cup, he would miss it by as much as 3 or 4 inches at a time. He was smoking a cigarette, let the cigarette burn clear down to

his finger and couldn't find the ashtray; and he had not been drinking or under the influence of alcohol. Would you feel on the basis of those facts that the accident in the morning was a triggering effect that started the cardiac vascular accident? . . .

Dr. Jack Lewis, board qualified in internal medicine, responded:

A. I think that because of the time factor involved and the natural history of a stroke occurring, that a precipitating event such as you described would have to be a cause and effect incident because of the hypertension. This would have certainly raised the blood pressure on an instant [sic] like you've talked about, and a big rise in his blood pressure would have certainly precipitated a hypertensive crisis and/or a stroke which occurred; and since this happened only hours afterward, I would feel from a medical standpoint there was a definite relationship.

Posed with a substantially similar question, with emphasis on the fact that the truck accident was precipitated by the mechanical failure of the brakes rather than any physical condition of the employee himself, Dr. Leslie Hellbusch, a neurosurgeon, replied: "A. Well, if that's true, then I think it would be more likely that the accident precipitated the stroke."

The relevant inquiry is whether the testimony is sufficient to establish, within reasonable probability, that the accident contributed in a material and substantial degree to the disability. The defendants argue that "expert medical testimony couched as 'more likely' is insufficient as a matter of law to support an award." Brief for Appellees at 17.

However, the case cited for this proposition does not so hold. *Husted v. Peter Kiewit & Sons Constr. Co.*, 210 Neb. 109, 313 N.W.2d 248 (1981), involved an employee who suffered a back injury. Two out of three doctors testified they could not causally connect the previous work accident to the current injury. One doctor was asked whether the injury took place at the time of the accident or during the subsequent bed rest. He responded that it was "more likely" that the injury occurred when the plaintiff was lifting rather than while in bed. This court refused

to find a causal connection, stating at 113-14, 313 N.W.2d at 251: "A workmen's compensation award cannot be based upon possibility or speculation. If an inference favorable to the claimant can only be reached upon the basis of possibility or speculation, he cannot recover. . . . An award cannot be based upon conflicting inferences of equal degrees of probability."

The instant case does not involve conflicting inferences. Under the controlling circumstances, both doctors concluded there was a relationship between the accident and the stroke. The issue is not whether the plaintiff would have suffered a stroke regardless of the incident, but whether the incident substantially contributed to the stroke. See, e.g., *Benson v. Barnes & Barnes Trucking*, 217 Neb. 865, 872, 354 N.W.2d 127, 132 (1984): "[W]e have consistently held that where an injury arising out of and in the course of employment combines with a preexisting condition to produce disability, though absent the preexisting condition no disability would have resulted, recovery can be had by the employee."

Dr. Lewis testified that the main causes of a stroke are arteriosclerosis and hypertension. It is undisputed that the plaintiff suffered from the former. However, it is also not subject to dispute that an accident of the kind suffered by Mr. Smith would cause a sharp rise in blood pressure or hypertension. The facts disclose that within a few hours after the accident Mr. Smith was undergoing significant problems with his motor coordination and his mental abilities. Those problems have continued from that time.

This court has stated innumerable times that

> findings of fact made by the Nebraska Workmen's Compensation Court on rehearing have the same effect as a jury verdict in a civil case, and an award may not be set aside where the findings are supported by the evidence. *Hamer v. Henry*, 215 Neb. 805, 341 N.W.2d 322 (1983). This court does not reweigh the facts.

*Person v. Red Lion Inn*, 217 Neb. 745, 746, 350 N.W.2d 570, 571 (1984).

Expert testimony indicated that the accident caused "a big rise in [plaintiff's] blood pressure [which] would have certainly precipitated a hypertensive crisis and/or a stroke which

occurred . . . ." This evidence would appear to satisfy the requirement of a substantial and material cause, and the record therefore supports the compensation court's finding.

The second argument advanced by the defendants is that there is an inadequate showing of greater employment stress. As noted earlier, this is an element of the greater burden in stroke cases to establish a causal connection between the employment and the disability. One inquiry may be whether this applies to disabilities arising from an employment accident, as opposed to the mere fact of employment.

*Mann v. City of Omaha*, 211 Neb. 583, 319 N.W.2d 454 (1982), cited by the defendants, involved a police officer who suffered a heart attack. He alleged that the day-to-day stress of police work, not any individual incident, caused his disability. Similarly, in *Newbanks v. Foursome Package & Bar, Inc.*, 201 Neb. 818, 272 N.W.2d 372 (1978), the plaintiff employee claimed that the stress of bartending caused his heart problems. In both instances the court evaluated the proof as to whether the stress of employment was greater than that of nonemployment life.

In the instant case plaintiff points to one individual incident which inarguably caused a high level of stress. Defendants' point appears to be that this was not established by expert testimony. Both doctors stated that such an accident would lead to a high level of stress. Neither compared the level of stress to nonemployment life, but it is clear that this employment-related accident caused a substantial increase in blood pressure. It seems to be not only a reasonable but an inescapable inference that this was greater stress than nonemployment life. As such, the award on rehearing is sustainable on the evidence contained in the bill of exceptions.

The judgment of the compensation court is affirmed.

AFFIRMED.

KRIVOSHA, C.J., concurring in the result.

I concur in the result reached by the majority in this case. I believe, however, that our earlier decisions which prompt us to find that the amendments contained in 1983 Neb. Laws, L.B. 18, are procedural and not substantive were wrong when they

were decided and have not improved in any manner with the passage of time. I would have affirmed on the basis that the amendments to Neb. Rev. Stat. § 48-125 (Supp. 1983), having been adopted after the cause of action herein arose, had no application to the instant case, just as the Workmen's Compensation Court found.

As noted by the majority opinion, our decision in *Western Newspaper Union v. Dee*, 108 Neb. 303, 187 N.W. 919 (1922), did indeed determine that an amendment to the Nebraska workmen's compensation law, enacted after the injury and providing for the payment of attorney fees, applied to cases arising before the act was amended. A reading, however, of the *Western Newspaper Union* case and the cases which preceded it, and upon which it relied, makes interesting reading and causes one to question the correctness of the decision. *Western Newspaper Union* relied, as its authority, on the cases of *Reed v. American Bonding Co.*, 102 Neb. 113, 166 N.W. 196 (1918), and *Johnson v. St. Paul Fire & Marine Ins. Co.*, 104 Neb. 831, 178 N.W. 926 (1920), neither of which had anything to do with workmen's compensation. Rather, both cases dealt with the relationship between a contract of insurance and a general statute which provided that if one sued upon a policy of insurance and recovered, one was entitled to additionally recover an attorney fee. In upholding the right of the plaintiff to recover an attorney fee, this court in *Reed* said at 116, 166 N.W. at 197: "The reasons advanced for this contention on the part of the defendant, and the manner in which they are presented in this brief, might well cause us to hesitate if the question was an open one." That is to say, even in 1918, we had some question as to whether the granting of a fee not previously allowed was merely procedural or was, in fact, substantive in nature and therefore had no retroactive application. In opting for the procedural view the court relied upon two earlier decisions, *Nye-Schneider-Fowler Co. v. Bridges, Hoye & Co.*, *modified* 98 Neb. 863, 155 N.W. 235 (1915), and *Ward v. Bankers Life Co.*, 99 Neb. 812, 157 N.W. 1017 (1916). Neither of these cases, however, offers any support for the position taken.

In *Nye-Schneider-Fowler Co., supra*, we did indeed permit

the payment of the fee. In doing so, however, we had some difficulty, saying at 867, 155 N.W. at 236-37:

> If the question that we are considering was now presented for the first time, we would hesitate to say that this statute does not create and add to the contract a legal liability which would not exist under the contract prior to the enactment of this statute. The fact that the attorney's fee is to be taxed as costs in the case is not of itself decisive of the question. It was uniformly held under the act of 1873 that attorney's fees provided for by that act were not a part of the judgment proper, but were to be taxed as costs in the case, and yet, after the repeal of that act, attorney's fees were not allowed in actions upon contracts entered into while the act was in force. The fact that the allowance of attorney's fees and taxing them as costs in the case depended upon there being an express provision in the contract for such allowance would not change the nature of the allowance, and if they were properly considered as costs in the case, and ought to be regarded as a part of the remedy and not as adding any legal liability, the reasoning would apparently be the same, whether or not the contract provided for such costs. If the new statute adds an additional burden to the contracting parties that without the statute would not exist, it has generally been considered that such statute could not be applied to a contract entered into before its enactment.

The court concluded, however, that by reason of an earlier decision of this court in *Security Co. v. Eyer*, 36 Neb. 507, 54 N.W. 838 (1893), attorney fees in states where they are allowed by the court to the successful party are in the nature of costs and are taxed and treated as such. Therefore, the allowance of such fees, the court concluded, was procedural and not substantive. Unfortunately, both the authority for that position and the rationale of the case leave much to be desired. Moreover, this court in the *Nye-Schneider-Fowler Co.* case, while recognizing that earlier decisions of the court held to the contrary, resolved that conflict by simply saying at 868, 155 N.W. at 237:

> If these decisions are inconsistent with *White v. Rourke*, 11 Neb. 519, and *Bond v. Dolby*, 17 Neb. 491, and other

cases following them, we do not feel at liberty to disregard the *later* cases, and must therefore hold that attorney's fees under this statute, as being a part of the costs of the litigation, relate to the remedy, and that it was the intention of the legislature that this statute providing for attorney's fees in such cases should apply, in all actions upon such contracts, whether the contract was made before or after the enactment of the statute.

(Emphasis supplied.) In effect, then, we now rely upon the *earlier* cases which earlier relied upon the *later* cases.

In both *White v. Rourke*, 11 Neb. 519, 9 N.W. 689 (1881), and *Bond v. Dolby*, 17 Neb. 491, 23 N.W. 351 (1885), statutes were enacted which authorized the payment of fees. After the causes of action arose, the statutes were repealed. In permitting the payment of the fees, this court in both *White* and *Bond* held that it was the law that applied at the time the contract was *enacted*, and not the law as it existed when the cause of action arose, which controls. The rule announced in *Western Newspaper Union v. Dee*, 108 Neb. 303, 187 N.W. 919 (1922), reaffirmed in *Solomon v. A. W. Farney, Inc.*, 136 Neb. 338, 286 N.W. 254 (1939), and once again reaffirmed in this case, is based upon nothing more than an unsupported statement to the effect that "it's always been that way," even if it has not.

The difficulty we have in declaring the amendments to § 48-125 as being procedural rather than substantive should be obvious. It is generally considered in the law that a substantive right is one which creates a right or remedy that did not previously exist and which, but for the creation of the substantive right, would not entitle one to recover. See, 40 Words and Phrases *Substantive* (perm. ed. 1964 & Supp. 1984); Black's Law Dictionary (5th ed. 1979). A procedural right, on the other hand, is considered to simply be the method by which an already *existing* right is exercised. In view of the fact that neither the attorney fees nor the penalties were available to the employee prior to the enactment of L.B. 18, it is difficult to see how they could be procedural and not substantive. It is for that reason that I would have agreed with the decision of the Workmen's Compensation Court that the act, being substantive in nature, had no application to an accident which occurred

prior to the enactment of the law.

WHITE, J., concurring in part, and in part dissenting.

I agree with the majority opinion. I write only to address the limited issue as to whether, under Neb. Rev. Stat. § 48-125 (Supp. 1983), the appellant is not entitled to an attorney fee in this court for services rendered in opposition to the cross-appeal.

The language of the statute applicable here is as follows:

If the employer files an application for a rehearing before the compensation court from an award of a judge of the compensation court and fails to obtain any reduction in the amount of such award, the compensation court shall allow the employee a reasonable attorney's fee to be taxed as costs against the employer for such rehearing, and the Supreme Court shall in like manner allow the employee a reasonable sum as attorney's fees for the proceedings in that court.

Prior to 1975 Neb. Laws, L.B. 187, the review by this court in Workmen's Compensation Court cases was de novo upon the record, with this court coming to an independent conclusion. Thus, regardless of which party appealed, the effect was that the issue of whether the employee had sustained his burden was before us.

We now review only for errors assigned. In this case the appellant employee did not seek to increase the award. His assigned errors related to other matters. It was the employer and its insurer, by cross-appeal, who raised the issue of the propriety of the award. The employer and its insurer did not prevail. The statutory precondition having been satisfied, I would award the appellant's (employee's) attorney $750 in this court for services in resisting the cross-appeal.

SHANAHAN, J., joins in this concurrence and dissent.