SMITH, Respondent, vs. CRUCIBLE STEEL CASTING COMPANY, Appellant.

*May 10—September 25, 1920.*

*Principal and agent: Commissions received from others: Disclosure of facts to principal: Validity of commission contract: Cancellation of contract: Evidence: Action for accounting: Recovery of damages to time of trial.*

1. It was proper for an employee of an automobile company to accept commissions from a steel company for placing orders from his employer with the steel company, if the employer knew the employee was receiving such commissions; and where the conduct of the employer indicated that it did not require to be informed as to the amount, the employee was not bound to disclose the terms of his commission contract.
2. The evidence is *held* to sustain the court's conclusion that there was no cancellation of the written contract for plaintiff to procure business on commission from the automobile company, and that the delivery of the commission contract to defendant's president was not a surrender of the contract but was upon the promise and condition that it would remain in

force and cover all future orders from the automobile com-
pany.

3. It was improper to limit the accounting sought to recovery of
commissions due prior to the commencement of the action,
and it should extend to commissions up to the date of trial.

APPEAL from a judgment of the circuit court for Mil-
waukee county: OSCAR M. FRITZ, Circuit Judge. *Reversed.*

This action was brought by the plaintiff for an accounting
and to recover commissions claimed to be due him upon
contract.

The complaint alleges, in substance, that defendant was a
corporation engaged in manufacturing steel castings, and
that the Four Wheel Drive Auto Company, hereinafter
called the Auto Company, was a corporation engaged in the
manufacture of auto trucks and was using and likely to use
in the future a large amount of steel castings; that about
June 8, 1915, defendant agreed with plaintiff in writing as
follows:

"We agree to pay you a commission of eighty-five cents
per hundred pounds on all castings made off of the Four
Wheel Drive Auto Company's patterns.

"Very truly yours,

"CRUCIBLE STEEL CASTING CO.
"F. A. Lange, President."

The plaintiff further claims that he secured for the de-
fendant the service of making the steel castings for the Auto
Company at the instance and request of the Auto Company,
with its assent that he was to receive such commission on its
orders for castings as defendant agreed to pay him, and
that at the date of the commencement of the suit defendant
had made for the Auto Company off of its patterns 3,250
tons of castings, upon which there is due plaintiff commis-
sions amounting to $55,250, of which plaintiff has received
from defendant $8,011.02. Plaintiff demands judgment for
the balance.

The answer of the defendant alleges that until August,

1915, plaintiff was employed by the Auto Company, and while so employed represented to defendant that he would secure for defendant a contract with the Auto Company for the manufacture of steel castings upon the condition that the defendant pay the plaintiff a commission of eighty cents per hundred pounds for such castings so manufactured by defendant from the patterns of the Auto Company during the period of such contract so to be procured by the plaintiff; that the letter produced in plaintiff's complaint was written by defendant to plaintiff; that prior to August 9, 1915, defendant manufactured some sample steel castings for the Auto Company; that on August 9, 1915, defendant and the Auto Company entered into a contract in writing for the manufacture of steel castings in the following terms:

"That in consideration of the covenants and agreements hereinafter mentioned, the first party agrees to make for the second party from patterns to be furnished by the second party, with core boxes for same in good working order, all steel castings required, and the second party agrees to order from said first party all of said above castings required by said second party between the 9th day of August, 1915, and the 1st day of April, 1916, to be delivered by the first party F. O. B. Clintonville, Wisconsin, at seven and one-half cents per pound for all steel castings."

The answer further alleges that after the contract of August 9, 1915, was made, plaintiff ceased to be employed by the Auto Company, and in September, 1915, organized a corporation to manufacture steel castings in competition with the defendant. It is also alleged that prior to March 31, 1916, plaintiff surrendered to the defendant the writing of June 8, 1915, and all rights thereunder, and made no further claim for commissions after the expiration of the contract of August 9, 1915, except as to castings which were ordered on or prior to April 1, 1915. Defendant claims to have paid plaintiff eighty cents per hundred pounds upon all the castings which were manufactured by the defendant for

and delivered to the Auto Company under the contract of August 9, 1915, and covered by the letter of June 8, 1915.

The case was tried before the circuit court. The court determined the suit to be one in equity and triable before the court, but took an advisory verdict of a jury, and a trial was had before the court and a jury. A special verdict was found by the jury. The trial court adopted the verdict of the jury and made its findings and ordered judgment for the plaintiff for the recovery of the commissions claimed to be due at the time of the commencement of the suit. This is an appeal from such judgment.

*Edgar L. Wood,* attorney, and *Frank M. Hoyt,* of counsel, both of Milwaukee, for the appellant.

*Waldemar C. Wehe, Christian Doerfler,* and *Walter D. Corrigan,* all of Milwaukee, for the respondent.

The following opinion was filed July 17, 1920:

SIEBECKER, J.  The trial court adopted the advisory verdict of the jury as the correct finding upon the issues of fact it embraced. The verdict found, in effect, (1) that it was agreed between the plaintiff and the defendant on or before June 8, 1915, that plaintiff was to receive a commission from defendant on all castings defendant made for the Auto Company off of patterns of the Auto Company; (2) that the commission to be paid was to be the balance remaining after deducting six and one-half cents per pound, plus freight charge to Clintonville, from the price of seven and one-half cents per pound of the castings; (3) that it was not agreed between plaintiff and the Auto Company that plaintiff was to supervise or inspect the castings made by defendant for the Auto Company; (4) that plaintiff returned to Mr. Lange, the president of the defendant company, in March, 1916, the letter of June 8, 1915, upon the express understanding and promise that the defendant would pay plaintiff the commission therein specified as long as the castings were made by

defendant for the Auto Company off of its patterns, and that plaintiff's commission was not to cease upon return of this letter to Mr. Lange. The court found, in addition to these facts, that the Auto Company in May, 1915, authorized plaintiff to place its work for the manufacture of steel castings off of its patterns with the defendant at the price of seven and one-half cents per pound, F. O. B. Clintonville, Wisconsin, and that it was expressly understood and agreed between the Auto Company and plaintiff that plaintiff could arrange with the defendant to receive a commission from defendant for such services upon such terms as might be agreeable, and that the plaintiff at all times, in negotiating for these castings from defendant for the Auto Company, acted in good faith in all his dealings with the president of the defendant and the Auto Company, and that such dealings resulted in delivering the letter of June 8, 1915, by Mr. Lange to plaintiff providing for the commission which plaintiff was to receive from defendant.

It is contended that the trial court erred by applying an erroneous rule of law in making material findings of facts and hence its findings are not entitled to the presumption of correctness in this court. The claim in this respect is that the court erroneously assumed that Mr. Battenberg, the chief engineer and designer of the Auto Company, had authority to sanction the paying of a commission to plaintiff by defendant for the service of placing the Auto Company's orders for steel castings with defendant. We discover no error in the rules of law applied by the trial court in resolving this issue of fact and the issue of fact raised between plaintiff and defendant's president respecting the return of the June 8, 1915, letter in March, 1916. The evidence is clear that Battenberg did not assume to authorize plaintiff to bargain for a commission with defendant. It shows that he conferred with plaintiff about it at Milwaukee, while there to inspect and survey defendant's plant and facilities for the Auto Company, and that upon making his report of the trip to the president of the Auto Company he informed

the president that plaintiff had arranged with the defendant for a commission on the Auto Company's order for castings. The Auto Company was thus fully informed that a contract for commission was made between the plaintiff and the defendant. The subsequent events respecting this commission and the conduct of the president of the Auto Company and of the president of the defendant company amply sustain the conclusion that these officers fully understood that plaintiff was to have a commission. Under these facts and circumstances the contract for commission was a proper one for plaintiff to make.

In view of these transactions the plaintiff was not required to disclose the terms of his commission contract to the Auto Company. The conduct of the officers of the Auto Company clearly shows that they did not require to be informed of the amount of the commissions defendant was willing to pay. Manifestly they were only concerned to secure good castings at seven and one-half cents per pound, and this the plaintiff secured for them.

It is strenuously urged that the court erred in adopting the jury's finding that it was agreed between plaintiff and Lange, as president of the defendant company, in March, 1916, when the plaintiff delivered the letter of June 8, 1915, to Lange, that the commission specified in this letter was to continue on all orders for castings by the Auto Company after March, 1916. The testimony regarding the interviews between plaintiff and Lange resulting in the delivery of this letter to Lange is in sharp conflict. A study of the facts disclosed and the facts and circumstances bearing on this issue persuades us that the jury and trial court are fully sustained in their conclusions to the effect that there was no cancellation of this written contract and that its delivery to Lange was upon the promise and condition that it was to remain in force and cover all future orders for castings by the Auto Company from the defendant. It is apparent that Lange understood that defendant was obligated to pay plaintiff commissions on future orders under the let-

ter of June 8, 1915, and that he took this fact into consideration in his negotiations for a contract for furnishing castings thereafter. This practical construction of the June 8th letter by Lange has the two-fold effect of tending to show that it was intended to be a continuing contract for commission so long as defendant furnished the castings as originally placed with defendant by plaintiff and that it was not canceled in March, 1916. The trial court's conclusions on these points are well sustained by the record and must stand.

Did the plaintiff forfeit his right to the commission by a failure to supervise the making and to inspect the castings? The court and jury found that no such agreement was made with plaintiff for such services in consideration of the commissions paid him by defendant. Upon this question the arrangement between plaintiff and the Auto Company, providing for supervision and inspection of the Auto Company's material and to help expedite deliveries thereof from Milwaukee, must be kept distinct from the transactions between plaintiff and defendant culminating in the commission contract. The employment of plaintiff by the Auto Company to attend to some of its business in Milwaukee was an independent engagement for which *Smith* was to receive $100 a month. It appears that this employment had nothing to do with the arrangements between plaintiff and the defendant for furnishing castings and that the Auto Company terminated this employment of plaintiff in July, 1915. It must also be borne in mind that the plaintiff and defendant arranged this commission contract in June, before it was reduced to writing on June 8, 1915. The evidence fails to show that the supervision and inspection service regarding castings were in any way made the subject of negotiations between plaintiff and Lange for furnishing steel castings to the Auto Company, nor were they a part of the negotiations culminating in the contract for paying the plaintiff a commission if the defendant secured a contract for castings. The evidence shows that the supervision and inspection serv-

ice arose out of the affairs incidental to the contract between defendant and the Auto Company for furnishing the castings and that it was made subsequent to the commission agreement of June 8, 1915. It is not a part nor a condition of the commission agreement between the plaintiff and defendant. From this state of facts it logically follows that any dispute concerning plaintiff's failure of supervision and inspection of the castings defendant furnished the Auto Company does not affect the performance or breach of the commission contract. The court and jury correctly found that these services formed no part of the consideration of the commission contract and that performance of the commission contract did not require that these services be rendered by plaintiff for the Auto Company or the defendant as a condition of recovery by him on the commission contract.

The defendant insists that plaintiff cannot recover on the commission contract because he represented to the Auto Company, through Lange, that the contract had been canceled, and that the Auto Company, relying on such cancellation of the contract, contracted for castings after the expiration of the August 9, 1915, contract, in the belief that plaintiff's commissions were no longer a factor in the prices offered it by defendant. This claim is made on the basis that the plaintiff was guilty of perpetrating fraud on the officers of the Auto Company by deceiving them into a belief that his commission contract had been canceled. The court, as above indicated, however, found that the commission contract had not in fact been canceled by plaintiff and Lange, and that when Lange obtained the letter from plaintiff in March, 1916, it was upon the express understanding that the contract was to remain in force and that plaintiff at all times acted in good faith in all his relations to the defendant and the Auto Company. These facts establish that plaintiff did not participate in any fraud, if any was practiced, in securing the contract for castings from the Auto

Company after April, 1916, and necessarily relieves him from the consequences of such an alleged wrong.

We have above indicated that the record sustains the court in its conclusions that plaintiff did not commit a fraud against the defendant or the Auto Company and that the contract for commissions was a subsisting one, and that it was mutually understood between plaintiff and Lange that it was to apply to castings furnished under contracts subsequent to the one of August 9, 1915. The question arises whether the court properly limited recovery for commissions up to the commencement of this action. The plaintiff offered to amend the complaint to the effect that defendant had furnished the Auto Company castings for which he is entitled to commissions up to the time of the trial of the action. This is an equitable action to obtain an accounting of plaintiff's commissions due under his contract. If any commissions accrued after commencement of the action and before trial, they are a part of the recovery under the contract sought to be enforced in this action. The defendant can in no way be prejudiced by having them ascertained and included in the recovery in this action. Such a procedure will obviate the bringing of another action, expedite the litigation, and save the parties expense. We think the trial court erred in refusing to include recovery of the commissions up to the time of trial. The judgment should therefore be reversed for the purpose of framing the pleadings to include the right of plaintiff to recover the commissions due him under the contract up to the time the accounting prayed for can be had after this case has been remitted to the circuit court. The findings of fact by the circuit court are in all respects affirmed in this court except as to the amount due the plaintiff under his contract.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded to the circuit court for further proceedings as indicated in the opinion, with direction that the court complete the accounting prayed for by the plaintiff and

State ex rel. Pollard v. Board of Medical Examiners, 172 Wis. 317.

award him recovery of the amount found due him from defendant.

The appellant moved for a rehearing.

In support of the motion there was a brief by *Edgar L. Wood* of Milwaukee, attorney for the appellant, and *Frank M. Hoyt* of Milwaukee and *P. H. Martin* of Green Bay, of counsel.

In opposition thereto there was a brief by *Waldemar C. Wehe, Christian Doerfler,* and *Walter D. Corrigan,* attorneys for respondent.

The motion was denied, with $25 costs, on September 25, 1920.