## J. W. BODLEY ·v. FIDELITY & CAS. CO. OF N. Y.

Western Section. January 15, 1926.

Certiorari denied by Supreme Court June 5, 1926.

Petition to Rehear denied July 12, 1926.

1. **Trial. Instructions. Not error for court to give jury hypothetical statement when charging them.**

In an action to recover on a theft insurance policy where question of , waiver was submitted to jury, held not error for trial judge in his charge as to the waiver to make several hypothetical statements of fact not pertaining to the case and tell the jury that they would amount to waiver.

2. **Trial. Not error to submit an issue to jury containing a mixed question of law and fact.**

In an action to recover on a theft insurance policy where the issues of waiver submitted to jury contained a mixed question of law and fact, held not error.

3. **Insurance provision requiring notice held waived where company at no time before trial evinced an intention to deny liability on that ground.**

In an action to recover on a theft insurance policy which required insured to give prompt notice of theft where company at no time prior to trial evinced any intention to deny liability on that ground but denied liability on other grounds held provision of policy waived.          ·

4. **Insurance. Question of waiver of time within which to bring suit held for jury.**          ·

Whether the provision of policy requiring insured to bring suit within twelve months after discovery of loss was waived by company held under the evidence a question for the jury.          ·

5. **Insurance. Question of waiver held properly submitted to the jury.**

Held court properly submitted broad question of waiver to jury rather than narrow issues of fact which were not necessarily determinative of the question of waiver.          ·

6. **Insurance. Condition of risk· not materially changed because a few small pieces of linen had been missed.**

In an action to recover on a theft insurance policy for the loss of three rings from plaintiff's home the fact that plaintiff's wife had colored servants and had missed a few pieces of linen but had no reason to believe servants stole them, held not a material change of condition of risk.

7. **Insurance. Evidence held sufficient to show loss by burglary.**

Where rings were last seen in plaintiff's chifferobe drawer only a week prior to discovery of loss and plaintiff and wife were people of high standing and integrity and three negro women, one of whom was shown to be dishonest, a negro boy, and a street motorman whose reputation was unsavory, all had access to the rings held sufficient evidence to sustain. findings of jury that rings were stolen.

8. **Insurance. Evidence held not to warrant penalty for vexatious delay under provisions of Act 1901, chapter 141.**

Evidence held to show that defendant acted in good faith in denying liability because of no theft and fact that it added to its defense the failure to give notice was not sufficient to warrant the penalty under Act 1901, chapter 141.          · ·

Appeal from Chancery Court, Shelby County; Hon. I. H. Peres, Chancellor.

Reversed.

Wilson, Gates and Armstrong, all of Memphis, for appellant.

Ewing, King and King, of Memphis, for appellee.

THOMPSON, J. This suit was brought by Dr. Bodley to recover, under a $2,000 theft policy, the value of certain articles alleged to have been stolen from his home. The lower court awarded him a judgment for the face of the policy i. e. $2,000, with interest thereon from December 26, 1922, amounting to $270, and a statutory penalty of $325; making a total of $2595. From this judgment or decree the defendant has appealed and assigned errors.

Dr. Bodley was a physician and surgeon, and lived with his wife, Mrs. Frances Bodley, and a two-year-old son, in their home at 786 Snowden Circle, Memphis, Tenn. They had three negro women servants and also a negro boy servant, all of whom, at times, had access to their bedroom. It, also, appears that one of these negro women turned out to be dishonest. Dr. and Mrs. Bodley were raising a little white girl in their home, on account of the fact that her mother was a drug addict. This little girl had a grown brother who was a street car motorman, and whose reputation was not very good. He visited the little girl in the absence of Dr. and Mrs. Bodley, and on these visits, it was possible for him to have had access to their bedroom.

For some time prior to October 5, 1922, Dr. and Mrs. Bodley had been missing napkins, towels, etc., and had tried to find out what was becoming of them; but without avail.

During the latter part of September, 1922, Mrs. Bodley wore three valuable rings which she had to a county fair and then put them under Dr. Bodley's jewelry box in his chifferobe drawer in their bedroom. During the last week of September, 1922, he saw them there and called her attention to them and to the fact that she ought to keep them locked up, but on account of the fact that she had misplaced the key to her chest they were left under the jewelry box in the chifferobe drawer. This was the last time they were ever seen by Dr. or Mrs. Bodley.

On October 5, 1922, Mrs. Bodley looked for the rings, as she wanted to wear them that day while she had her picture taken for a Memphis newspaper, but they were not there. She informed Dr. Bodley of this fact and they searched the entire house but were unable to find them. They also took an inventory of their linen, etc., and discovered that two linen towels, eight Turkish towels, twelve plain napkins, and three linen dinner napkins were missing. They also questioned their servants. At first they did not think, or rather did

not feel certain, that the rings and linen had been stolen, and they continued their search, etc., for three weeks before they became thoroughly convinced that they had.

On October 26, 1922, Dr. Bodley called Messrs. Treadwell & Harry, general agents of the defendant company at Memphis, over the telephone and advised them of the loss and asked them whether he should also report the matter to the police. Mr. Treadwell told him that he need not notify the police as he (Treadwell) would do so. Mr. Treadwell did notify the police or city detective department, and two detectives went immediately to Dr. Bodley's home. Mr. Treadwell also sent the company's adjuster, Mr. John Mitchell, to Dr. Bodley's home. Mr. Mitchell either went there in company with the city detectives or met them there. They searched the home carefully and interrogated the servants and discussed the loss with Dr. and Mrs. Bodley. Mitchell asked Dr. Bodley what the value of the rings was, and Dr. Bodley told him that he could not at that time state definitely what their value was; but that he would find out what it was from Mrs. Bodley's mother, who knew the value of one of the rings, and from the jeweler who made up one of the others; and Mitchell then told him that as soon as he got this valuation the company would make a settlement, and that it would not be necessary for Dr. Bodley to make and file any other or further proof of loss.

Mitchell then filled out a preliminary report of the loss on one of the company's printed forms. He stamped it with his own stamp on that date, i. e., October 26, 1922, and sent it to the company's St. Louis office where it was received and stamped under date of October 28, 1922. Line eight of this preliminary report was as follows: ''Detailed account of the circumstances under which loss occurred................ Rings and linens were taken from assured's residence sometime between June 1st, and October 5th. There were no visible signs of forcible entry was detected to the premises.''

Line ten was as follows: ''Estimated total value of property stolen: $1275 consisting of: Jewelry $1200; linen articles $75.

One of the rings, a platinum wedding ring, set with about fifteen diamonds which extended half way around it, had been bought by Dr. Bodley in Paris, France, for $125. Another one of the rings had been made up by a jeweler at Philadelphia, Pa. It had one large diamond, which had belonged to Dr. Bodley's mother, with several small diamonds set around it. The third ring consisted of two diamonds, which had belonged to Mrs. Bodley's mother, with a large sapphire between them. This ring had been made up by a jeweler at Sioux City, Iowa.

At the time the loss was discovered (Oct. 5, 1922); and at the time Dr. Bodley called Treadwell & Harry and reported the loss to them, which was the same day that Mitchell and the detectives went

to Dr. Bodley's home, and the same day that Mitchell filled out the preliminary report (Oct. 26, 1922), Mrs. Bodley's mother was in California, but was expected to come to Memphis in a short time to visit Dr. and Mrs. Bodley. So, it seems, that they waited until she arrived before taking any active steps toward finding out the value of the rings; and it also seems that her visit was delayed somewhat.

However, the Sioux City jeweler, Will H. Beck Company, in addition to making up one of the rings, had cleaned and tightened the settings in the others, and was familiar with the value of all three of them; and on August 16, 1923, Dr. Bodley, after considerable trouble and annoyance, as well as some slight expense, procured from this jeweler, and filed with the defendant company, at the office of its agent and adjuster at Memphis, an appraisal of the three rings. This appraisal stated the value of the ring containing two diamonds and a sapphire at $1,000; the ring containing one large diamond with several small ones around it at $1,200; and the wedding ring at $125.

At the time Dr. Bodley procured this appraisal and filed it with the company's agent and adjuster at Memphis, the original adjuster, Mr. Mitchell had died, and a Mr. Case had been appointed in his place. When Dr. Bodley filed the appraisal on August 16, 1923, he remarked to Mr. Case that he was ready to make a settlement, etc., and that there was no use to consider the value of the linen because the value of the rings was more than the $2,000, face value of the policy; to which Mr. Case repied: "I see no reason for any trouble. Of course, I am not able to say, one way or the other, as I do not have that authority. But I think this will be settled very shortly."

On September 5, 1923, Dr. Bodley was in the office of the agents and adjuster at Memphis and dictated a statement of the entire matter. This statement was in the form of a letter addressed to Mr. Case, the adjuster, and was signed by Dr. Bodley and left with Mr. Case at that time.

At no time did Mitchell or Case raise any question as to Dr. Bodley's delay in giving notice of the loss, and they both instructed him to furnish the appraisal, and told him that they thought the claim would be settled. But they also told him, and Dr. Bodley thoroughly understood, that they did not have authority to pass upon the claim, and that it would be necessary for them to forward all the papers to the home office of the company where it would be decided whether or not the company would pay the claim.

After all of the papers pertaining to the claim had been received in the company's home office in New York, Mr. Treadwell was there and discussed the claim with the head men of the claims department. He testified that their conversation disclosed to him that one of the

objections which they made to the payment of the claims was upon the ground that notice had not been given until three weeks after the loss was first discovered and that, therefore, the company had had no opportunity "to make an investigation while the thing was hot." However this objection seems never to have been communicated to the company's adjuster at Memphis; and certainly not to Dr. Bodley. The other ground of objection was that no theft had been shown, but merely a disappearance which was not covered by the provisions of the policy.

On Sept. 28, 1923, Mr. H. R. Buttery, the company's assistant superintendent at New York, wrote a letter as follows:

"St. Louis Claim Office                          "Sept. 28, 1923."
   "Mr. G. A. Hodgman, attorney.
                "In re: Dr. J. W. Bodley
                "Res. Policy No. 1081 8
                "Claim No. O. L. 2162
                "Your No. 55561-M 1420.

"We have discussed with Mr. Maher the question involved here and it is his opinion that the assured has by no means shown any evidence of burglary, larceny or theft and we therefore wish that you would after taking the matter up with the agents in the usual way and provided they have no objections on which they desire us to pass, deny liability to the assured."

                        "Yours truly,
                          "H. R. Buttery,
              "Assistant Superintendent."

Upon receipt of this letter, Mr. Hodgman enclosed a copy of it with a letter which he wrote to Mr. Case on October 2, 1923, as follows:

                            "Oct. 2, 1923."

"Mr. Case:—
      "Re: Dr. J. W. Bodley—R. T. S. Pol. No. 10818
        "H. O. No. OL-2162.   St. L. No. 55561-1420

"Please note Mr. Buttery's letter herewith, which please discuss with Treadwell and Harry.

                        "G. A. Hodgman,
                      "Attorney, St. Louis."

Mr. Case received this letter on October 3rd, or 4th, 1923, but on account of the accumulation of business in his office, he did not take it up with Dr. Bodley for several days (which was then more than one year after the loss of the rings was first discovered on October 5, 1922). Mr. Case then called Dr. Bodley over the telephone and told him that the company had declined to pay the claim. Dr. Bodley became angry and did not give Mr. Case an opportunity to tell him upon what ground the company had denied liability, but it appears

that Mr. Case's intention was to put it wholly upon the ground that no loss by theft had been shown, etc., and not upon the ground that there had been a delay in giving the company notice of the loss, as required by provision sixteen of the policy which is as follows:

"16. The assured, upon the discovery of any loss covered under this policy or of any attempt to effect such loss, shall give immediate notice thereof by telegraph (at the company's expense) to the company at its home office, briefly stating the particulars and probable amount of loss, and shall also give immediate notice thereof to the public police authorities having jurisdiction."

Shortly after this, Dr. Bodley brought suit on the policy seeking to recover the value of the rings and linen, plus interest, and the statutory penalty of twenty-five per cent, etc. The original bill did not specifically allege compliance by the complainant with all the provisions, conditions and requirements of the policy, but did allege that "under the terms of said policy the defendant became obligated and liable to the complainant," etc.

The defendant's answer, after denying liability, and that the loss was such as to be covered by the policy, stated: "Defendant . . . specifically pleads that even if said loss was embraced in said contract of insurance, complainant failed to comply with the obligations imposed upon them by the contract, and thereby released defendant from any liability that might have otherwise existed," etc.

The complainant then filed what is called the first amendment to the original bill. This amendment, after quoting a provision of the policy that no suit should be brought unless begun within twelve months from the date of the occurrance of the loss, alleged that the defendant had waived its right to rely upon this provision by having told complainant that they would pay the loss upon receipt of the appraisal, which promise they did not decline to carry out until more than twelve months had expired, and had thus caused complainant to let the twelve months go by without bringing suit, etc.

Defendant filed an answer to this first amendment, the substance of which answer joined issue on the amendment.

The complainant then filed a second amendment to the bill. This amendment first alleged that complainant "did comply with all provisions of said contract, except such as were waived by the defendant, and which defendant is estopped to rely upon." It then quoted provision 16 of the policy (hereinbefore quoted) requiring immediate notice, etc., and then alleged as follows:

"Complainants allege that they gave immediate notice to defendant's general agents at Memphis, Tennessee, Treadwell & Harry, and that said general agents notified defendant's home office, and that said general agents and defendant's adjuster informed complainants that this was all the notice it was necessary for complainants to

give, and that the defendant immediately proceeded to investigate, and did thoroughly investigate said loss; did negotiate with complainants with reference to a settlement of same; and did represent to complainants that said loss would be settled as soon as an appraisal of the jewelry loss was delivered to defendant, which appraisal was delivered by complainants to defendant.

"Defendant also notified complainants that it was not necessary for them to give immediate notice of said loss to the public police authorities having jurisdiction, and in compliance with this request, complainants did not give such notice. Defendant, however, did give this notice and the public police authorities did make an immediate investigation of the loss.

"Complainants, therefore, allege that defendant by its statements, representations and conduct, waived said requirements of said policy, and induced complainants to believe that said requirement would not be insisted upon; that the complainants did actually so believe, and that, therefore, defendant is estopped from now relying upon said provision."

Since it is discussed in the briefs, we might state here that we do not think that the effect of this second amendment was to allege a compliance with provision 16 of the policy, which required immediate notice by telegraph to the company at its home office, and also immediate notice to the police authorities. To the contrary, it alleged that immediate notice was given to the company's general agents at Memphis, and that this, in connection with the other averments of fact therein contained, amounted to a waiver of defendant's right to rely upon complainants' failure to comply with provision 16 of the policy.

Defendant did not file any pleading in response to this second amendment but the lower court treated it as though the defendant had joined issue on it, and the case was tried upon oral testimony and special issues which were submitted to a jury.

The complainant tendered an issue (along with others) on the question of whether defendant had waived "the provision of the policy of insurance requiring the assured upon discovery of any loss to give immediate notice thereof by telegraph (at the company's expense) to the company at its home office," and the "provision of the policy of insurance requiring the assured to give immediate notice of the loss to public authorities having jurisdiction." But complainant tendered no issue as to whether complainant had in fact complied with provision 16. In other words complainant tendered an issue on the question of waiver, but not of compliance.

Complainant also tendered issues upon the question of whether the defendant had waived its right to rely upon the twelve months' limitation within which suit should be brought.

The issues which the court submitted to the jury and the answers of the jury thereto are as follows:

### ISSUE I.

"Were there, during the month of October, 1922, taken from the interior of complainant's residence by burglary, larceney or theft, a diamond sapphire platinum ring, a wedding ring, solitaire diamond ring, two linen towels, eight Turkish bath towels, a dozen tea napkins, and three linen dinner napkins? ANS. Yes.

### ISSUE II.

"If you answer issue I in the affirmative, state their value. $2450.

### ISSUE III.

"A. Did the defendant waive the provision of the policy of insurance requiring the assured upon discovery of any loss to give immediate notice thereof by telegraph (at the company's expense) to the company at its home office? Yes.

"B. Did the defendant waive the provision of the policy of insurance, requiring the assured to give immediate notice of the loss to public authorities having jurisdiction? Yes.

### ISSUE IV..

"Did the defendant make any promises, or representations, or do any acts reasonably calculated to induce the complainant to believe that his claim would be settled and that the provision of the policy requiring suit to be brought within twelve months would not be insisted upon? Yes.

### ISSUE V.

"If you answer the foregoing question in the affirmative, state whether or not the complainant relied upon said acts, promises and representations, and whether he was induced by same not to file suit within twelve months from the date of the occurrence of the loss? Yes.

### ISSUE VI.

"Was the refusal of the defendant to pay the loss sustained by complainant in bad faith? Yes.

### ISSUE VII.

"If you find that the refusal to pay the loss was not in good faith, state to what penalty complainant is entitled, same to be measured by

the additional loss and injury entailed upon complainant by defendant's refusal to pay, if you find that any was so entailed? $325.''

It will be seen that insofar as the question of notice was concerned, the only question either submitted by the complainant to the court, or by the court to the jury, was one as to a waiver. The question as to whether notice on October 26, after the loss had been discovered on October 5th, was within a reasonable time considering all the facts and circumstances, was not passed upon, and we think it clear from the record, including the court's charge to the jury, and colloquies between court and counsel, that complainant did not contend that it was within a reasonable time, and that the court did not consider that it was. If that question had been submitted to the jury and the jury had found that notice on October 26th was within a reasonable time under all the facts and circumstances, it might be that we could say that there was material evidence to support the finding, but we certainly cannot now, in the shape the record is in, and on our own initiative hold that the notice was given within a reasonable time, etc., and therefore constituted immediate notice. We are, therefore, limited to the question of whether there was a waiver of provision 16 of the policy, which is the principal contention made by defendant in this court.

Before taking up this question of whether the defendant waived provision 16, etc., we think it proper to deal with one or two preliminary questions concerning it which are raised by the assignments of error. The 18th and 19th assignments of error make the question that the trial judge erred in his charge as to the waiver, in that he made several hypothetical statements of fact not pertaining to the case, and told the jury that they would amount to a waiver. He did this merely by way of illustration to the jury, and we do not see how the defendant could have been injured. These two assignments are therefore overruled.

The third assignment of error makes the question that the issues which the court submitted to the jury on this question of waiver involved mixed questions of law and fact, and that for this reason they should not have been submitted. It is not error to submit an issue to a jury simply because it contains a mixed question of law and fact, and a number of the decisions cited by both complainant and defendant show that issues, similiar to the ones in this suit, were submitted to the juries, and in none of them was it suggested that this was error. See also our Tennessee cases of McElya v. Hill, 21 Pickle, 319; Chrisman v. McMurray, 23 Pickle, 469; and Cooper v. Ball, 19 Cates, 146. The third assignment of error is, therefore, overruled.

The first, second and twelfth assignments of error, in one form or another, make the question that there was no waiver of provision

16 of the policy, and therefore, that complainants' suit should have been dismissed at complainant's cost. This brings us to the principal question in the case, which we will consider in connection with provision 18 of the policy, which provides as follows:

"18.   Affirmative proof of loss within the provisions of this policy must be made under oath and filed with the company at its home office in New York City within sixty days from the date of the discovery of the loss.   The delivery or withholding of any form by the company, or the receipt or retention of any proof by the company, or any act of the company or its representatives in the investigation of any claim, shall not waive any of the company's rights."

As we understand the situation, it is admitted by defendant that it waived the form of the notice; that is that it was oral and to the agent at Memphis, instead of by telegraph and to the home office; or at least defendant admitted that the oral notice to the agent at Memphis would have been sufficient had it been given in due time.   It is further admitted by defendant that it waived the necessity of complainant notifying the public police authorities.   But the defendant's contention is that the notice should have been given prior to October 26th, and that when complainant gave it on that date he had already failed to comply with the requirement of the policy; that no act, statement or conduct of the company had caused complainant to wait until October 26th before giving the notice; and that there having thus already been a forfeiture of complainant's rights under the policy, the defendant cannot be held to have waived the same by accepting the notice, investigating the claim and asking for the appraisal, etc., because defendant in so doing was protected by the non-waiver agreement contained in provision 18 of the policy.

Many decisions have been cited by both complainant and defendant. We have read as many of them as we have had access to and it seems to us that they are in almost hopeless conflict and confusion and that many of them are not in point.   However, many of the cases hold that waiver rests merely on intention, and that it is not necessary that there be elements of estoppel.   These 'cases hold that if the facts show an intention upon the part of an insurance company not to rely upon a particular provision of its policy, that provision has been waived, regardless of whether the assured did, or did not do, some particular act; or did, or did not, change his position, etc., in reliance upon the intention or waiver thus evinced or manifested by the insurance company.

Many cases hold that where an assured has gone to trouble and expense in reliance upon an intention manifested by an insurance company not to rely upon a particular provision in its policy, that provision has been waived.

Many cases hold that a non-waiver agreement whether contained in the policy or executed after the loss, should be strictly construed, and that any act beyond its strict scope may be relied upon as a waiver.

Many cases hold that a non-waiver agreement, whether contained in the policy or executed after the loss, may itself be waived by parol, and by any acts or conduct inconsistent with an intention to rely upon it.

Without attempting to review or discuss the numerous cases cited in the briefs of complainant and defendant, we think that three of of the cases cited by complainant tend somewhat to support a holding in the instant case that defendant waived its right to rely upon the failure of complainant to comply with provision 16 of the policy. They are Beauchamp v. Retail Merchants, etc., Company, 165 N. W., 545; Henderson Fire Ins. Co., 121 N. W., 714; and Springfield Fire & Marine Ins. Co. v. Fine, 216 Pacific, 898.

We think that the record fairly establishes the fact that defendant never at any time evinced an intention to deny liability upon the ground that provision 16 had not been complied with by complainant, and that it would not in fact have denied liability upon this ground if it had been of the opinion that a loss by theft, etc., as distinguished from a mere disappearance which was not covered by the terms of. the policy, had been sustained by complainant. In other words, the defendant having denied liability purely and alone upon the ground that there had been no burglary, larceny or theft committed, simply added to its defense to the suit the fact that complainant had failed to give the immediate notice required by provision 16 of the policy. In view of these facts, we overrule the first, second and twelfth assignments of error, all of which are based upon alleged errors in connection with this question of waiver of provision 16 of the policy.

The fourth assignment of error is based on the action of the court in submitting to the jury the fourth and fifth issues of fact. The fourth and fifth issues were whether or not the defendant induced complainant to believe that his claim would be settled and that it would not be necessary for him to bring suit within the twelve months after the discovery of the loss, and whether or not complainant failed to bring suit within the twelve months on account of this belief. The point made is that there were no issues made by the pleadings, and no evidence. introduced at the trial, which justified the submission of these questions to the jury, or which supported its findings. We have already stated that such issues were specifically made by the pleadings, and we think there was ample evidence introduced to justify the court in submitting them to the jury, and to

support the findings of the jury thereon. The fourth assignment of error is therefore overruled.

The sixth, seventh, eighth, ninth, tenth, eleventh and thirteenth assignments of error are based upon the action of the court in admitting certain evidence over the objection of defendant, and the sixteenth assignment of error is based on the action of the court in overruling the defendant's motion to strike certain of this evidence. These assignments are too lengthy to quote in this opinion, but we have examined them carefully and do not think that any reversible error was committed by the chancellor in permitting the introduction of the evidence complained of, or in overruling the motion to strike, and these assignments are, therefore, overruled.

The fourteenth and fifteenth assignments of error make the question that the court erred in refusing to submit to the jury two issues which were presented by the defendant, as follows:

"Did any agent, representative or adjuster of the defendant state to complainants or either of them that the loss would be paid when an appraisal of the diamonds alleged to have been lost by the complainants were obtained from W. Cornish Beck, Sioux City, Iowa?"

"After the appraisal was made and furnished defendant, did any one of its agents, representatives or adjusters say to the complainants or either of them that: 'There would be no trouble about the payment of the loss?'"

In support of these assignments defendant argues that complainant claimed that such statements were made to him, and that the question of whether or not they were made to him, should have been submitted to the jury as a question or questions of fact, rather than submitting the broad question of waiver, which defendant insists was a mixed question of law and fact.

We think the court was correct in submitting the question of waiver to the jury (as was done) rather than these narrow issues of fact which were not necessarily determinative of the question of waiver. McElya v. Hill, supra. The fourteenth and fifteenth assignments of error are, therefore, overruled.

The seventeenth assignment of error makes three questions, not already dealt with: 1st, That the condition of the risk had materially changed, and increased the hazard; 2nd, That there was no proof that there was any loss by burglary or theft of the articles, the evidence showing only a disappearance not covered by the policy; 3rd, That there was no evidence of bad faith in the transaction and the question of the penalty should not have been submitted to the jury.

As to the first of these questions: The policy, among other things, provides that: "The company shall not be liable for any loss . . . if the conditions of the risk are so changed as materially to increase the hazard." It is argued by defendant that the record

shows that Dr. and Mrs. Bodley, from and after June 1, 1922, missed various articles of linen and that therefore the conditions of the risk were so changed as materially to increase the hazard. It is true that after June 1, 1922, and prior to October 5, 1922, they did miss a few linen articles, but it was not until after October 5, 1922, that they became aware of the extent of this loss of linen. Neither did they have any particular reason for believing that they had been stolen, instead of lost in the laundry, and certainly they had no convincing evidence of theft prior to October 5, 1922. We do not believe that we would be justified in holding that on account of these trifling losses of linen, the conditions of the risk were so changed as materially to increase the hazard, and this contention of the defendant is overruled.

As to the second question, i. e., that there was no proof that there was any loss by burglary, larceny or theft, as distinguished from a mere disappearance. We have already stated that three negro women, one of whom was shown to be dishonest, a negro boy, and a street car motorman whose reputation was unsavory, all had access to the rings. Dr. and Mrs. Bodley both saw the rings under the jewel box in a chifferobe drawer in their bedroom only a week or so prior to the discovery of their loss. Dr. and Mrs. Bodley are shown to be people of high standing and integrity, and it seems that it is practically impossible for the disappearance of the rings to be accounted for upon any other theory than that they were stolen. We are therefore of opinion that the evidence is sufficient to support the finding that the rings were stolen. Great Eastern Casualty Co. v. Boli, 187 S. W., 686; Enery v. Ocean Acc. & Guarantee Co., 176 N. W., 566; Stern v. Employees Liability Assur. Corp., 249 S. W.. 739; Miller v. New Amsterdam Casualty Co., 110 Atl. 810. This contention of defendant is therefore overruled.

As to the third question, and also assignments five and twenty, which raise the question that the defendant acted in good faith in declining to pay the claim, and therefore, that the statutory penalty should not have been allowed. We do not think defendant should have been held liable for the $325, penalty under the facts disclosed by the record. This penalty was, of course, imposed under and by virtue of the provisions of Acts 1901, chapter 141, which has been under consideration by the Supreme Court in the following cases: Thompson v. Life & Accident Co., 128 Tenn., 526; Grain Co. v. Weaver, 128 Tenn., 609; Insurance Co. v. Kirkpatrick, 129 Tenn., 55; Harowitz v. Fire Ins. Co., 129 Tenn., 691; DeRossett Hat. Co. v. Fire Ins. Co., 134 Tenn., 199; Silliman v. Life Ins. Co., 135 Tenn., 646; Thompson v. Fire Ins. Co., 142 Tenn., 408.

It is true that in Insurance Company v Kirkpatrick, supra, the Supreme Court held that the burden is on the insurance company to

make it appear that it acted in good faith, or did not act in bad faith, in declining and refusing to pay; but we think that the defendant, in the instant case, has carried this burden; and that there is no material evidence to the contrary.

As has been stated, we think defendant declined to pay the claim simply because it did not consider that the circumstances surrounding the loss disclosed that a burglary, larceny or theft had been committed; but only a disappearance for which it would not have been liable under the terms of its policy. And we think defendant entertained this belief honestly and in good faith. This, because the original report made to defendant expressly stated that there were no visible signs of forcible entry; and the letter from Mr. Buttery to Mr. Hodgman, hereinbefore quoted and the introduction of which was forced by the complainant, instructing him to deny liability because there was no evidence of burglary, larceny or theft, is strong evidence that the defendant was acting in good faith. We say this because the letter shows on its face that although Mr. Buttery was of opinion that there was no liability, as there was no evidence of burglary, larceny or theft, nevertheless he was still willing to reconsider his decision, if the agents, Treadwell & Harry, could give any valid reason why the claim should be paid. It seems to us that this willingness to reconsider the claim, which he did not think was meritorious, is conclusive evidence of his good faith.

Acting in good faith in resisting payment on the ground that there had been no burglary, larceny or theft committed, we do not think the defendant should be onerated with the penalty, simply because it added to its defense to the suit to enforce payment, the additional grounds of defense based on the provisions of the policy with reference to immediate notice and the twelve months period within which suit might be brought.

For these reasons we think that there was no material evidence to support the finding with reference to the penalty, and that the lower court was in error in allowing it. The assignments of error based on the allowance of the penalty are therefore sustained, and the judgment or decree of the lower court will be set aside, and a judgment or decree in favor of complainant, Dr. J. W. Bodley, for the benefit of Mrs. Frances Bodley, against defendant, Fidelity & Casualty Company of New York, and its surety on its appeal bond, American Surety Company of New York, will be entered in this court for the sum of $2,000, with interest from December 26, 1922, and the costs of the cause, including the appeal.

Senter and Owen, JJ., concur.