Hamill, Appellant, *v.* Fidelity & Casualty Co. of New York.

Argued December 15, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Stadtfeld, JJ.

*Benjamin H. Ludlow,* for appellant.

*Robert P. F. Maxwell,* and with him *George F. Blewitt,* for appellee.

Opinion by Linn, J., March 5, 1932:

Plaintiff appeals from judgment for defendant, entered notwithstanding a verdict for plaintiff, in an action on a residence theft policy of insurance. De-

fendant agreed "to indemnify the assured for all loss by burglary, theft or larceny of any of the property insured, ...... from within the house ...... committed by a guest or by a domestic servant or other employee of the assured or by any person whose property is not covered hereby."

She claimed, in the statement, for the theft of certain articles of linen, underclothing and jewelry. The judgment n. o. v. was entered on the ground that the evidence showed a loss of the articles in question, but that it did not show that they had been stolen. The only question is whether there was sufficient evidence of theft to go to the jury.

The principal item involved is jewelry—4 rings. March 30, 1926, plaintiff took the rings from her safe deposit box in a trust company. She placed them in a bag which she made from a white glove; she "made compartments where the rings could go and put a string in it at the top, and it was made so you could roll it up and I rolled it up ...... She placed this in a wall-safe in her bedroom. This safe was about "a foot square inside,"—with "just one compartment," locked with a combination lock, of which she, alone, knew the combination. The safe in the wall was concealed by a picture that hung in front of it. Just below the safe on the floor was a radiator, three feet long. On May 28th, she went to the safe to obtain one of the rings, and discovered that the bag containing them was missing. The safe showed no signs of having been tampered with. In the safe, she kept "old family letters and papers, my insurance policies and I kept other jewelry in there." She never saw the rings after putting them in the safe March 30th. She testified that a few days after putting them in, she went there immediately prior to going to Atlantic City and, while taking something from it, part of the contents fell out. Her testimony is "I went to the

safe to get some money to go to Atlantic City with, and as I went, several things fell out. Q. What fell out? A. Fell out of the safe, and evidently the bag with the rings fell out at that time. I picked up several things and thought I had picked up everything and put them back in the safe, the bag may have caught behind the radiator." During her absence in Atlantic City, two servants, husband and wife, were left alone in the house; they had been employed on March 12 and were discharged on April 22. These servants had access to the entire house. After discovering that the rings were not in the safe on May 28, she searched the house, but could not find them; she gave notice to defendant and to the police, accusing the discharged servants of theft. She testified that before she went to Atlantic City, the servants were agreeable and obliging, but after she returned, "they apparently did everything to aggravate me and were very impertinent," for which she discharged them. Both the servants were in court during the trial; one of them was called by the defendant; the other was not called. This servant testified that she never saw the jewelry and did not know of the existence of the safe. Plaintiff has three minor children, the only other occupants of her house beside the servants; two of them testified that they did not know what became of the rings; the third was not called. Plaintiff contends that the evidence, which has been briefly stated, is sufficient to go to the jury to establish liability under the policy.

The jury was justified in finding, as we assume it did, the following facts; plaintiff put the bag containing the rings in the safe and, of the people in the house, she alone, had the combination; they were not in the safe on May 28 when she opened it for the purpose of taking one of them out; early in April, some of the contents fell out of the safe; the bag containing the rings was among the articles that fell out;

in picking up these articles, she accidentally missed the bag with the rings; it "may," in her words, "have caught behind the radiator," or fallen to the floor; she did not discover it then.

Up to this point, certainly, the evidence would support a finding that the last resting place of the bag known to plaintiff was that it was "caught behind the radiator," or was lying on the floor of her bedroom. The inquiry, then must be—is there anything in that evidence to support the ultimate fact that the bag was stolen? The plaintiff contends that the circumstances shown support that inference and no other; defendant contends that an inference equally consistent with the circumstances may properly be drawn to the effect that an object like this bag, made of a white glove, may have been swept up in cleaning and have been disposed of like other sweepings, and that, notwithstanding the conduct of the servants complained of, does not justify the inference that one of them found and stole the bag.

The inquiry is what, if any, inference may be drawn from those facts, in view of the additional evidence that plaintiff and the children were out of the house for several days during which it was occupied only by the two servants, one being the chambermaid?

If, instead of hanging on the radiator, or lying on the floor, the white bag with the rings had been put on a bureau, or into a drawer, and had disappeared in circumstances in other respects not essentially different from those shown here, the jury would have been permitted to determine whether it had been stolen: Green v. Met. Cas. Ins. Co., 100 Pa. Superior Ct. 274; Perry v. Southern Surety Co., 78 Ibid 222; Miller v. Mass. Bonding Co., 247 Pa. 182. The following cases support the same conclusion: Sitch v. Fid. & Dep. Co., 159 N. Y. S. 712 (rings, with other jewelry, in box in locked drawer in hotel room

—key hidden—few days later, rings missing—hotel servants had access to room); Finglas v. New. A. Cas. Co., 151 N. Y. S. 371 (jewelry in a case on top of dresser—missing after strange man had been in house); Wolfe v. Aetna Ac͡. Co., 170 N. Y. S. 787 (unset stone wrapped in paper in cereal can on shelf in kitchen—janitor in room); Reed v. Am. Bond Co., (Neb.) 166 N. W. 196 (ring in jewel box—servant left); Emery v. Ocean Ac. G. Co., (Mich.) 178 N. W. 566 (pin under box in drawer—six days later, pin missing—maid left—workmen about); Kroloff v. South S. Co., (Iowa) 198 N. W. 629 (diamond wrapped in paper in box in drawer—servant); Stern v. Employers' Liability Co., (Mo.) 249 S. W. 739 (jewelry and money in bag in drawer, one piece jewelry missing—servants); McDuffy v. Gen. Ac. Co., (R. I.) 131 Atl. 548 (rings in box in drawer—servants); Sowden v. U. S. F. & G. Co., (Kan.) 252 Pac. 208 (jewelry on top of chiffonier lying on keys—next morning jewelry missing); Bodley v. R. & G. Co., 1 Tenn. App. 720 (rings in box in drawer,—missed a week later with linen—servants); see, too, note in 41 A. L. R. 846 to Fid. & Cas. Co. v. Wathen, 205 Ky. 511; 266 S. W. 4 (diamond pin on dresser,—room locked).

In a general way, appellee concedes that, of the cases cited, those in which (in the words of the brief) ''the jewelry was placed in such a position that it would require intentional intervention of human agency to remove it'' are correctly decided; but that those in which the jewelry may have accidentally got on the floor, and then may have ''been kicked away to one side or been mislaid,'' are incorrectly decided; this second class appellee describes as ''mere disappearance'' cases, of which, it contends, this is one.

We think the jury was entitled to say whether this white bag containing the rings, described as this bag was, whether lying on the floor or hanging on the

radiator, must have been picked up by some person other than the owner, or a member of the family, and have been appropriated to the use of the person who picked it up. Appellee's argument that it is a "mere disappearance" case can only be supported on the theory that the object was so insignificant in appearance as to attract no more attention, than other rubbish, if gathered up in the process of sweeping or cleaning; we do not think that conclusion can be declared as matter of law.

The other items remain to be mentioned. In addition to the rings other items of property were said to have been stolen, among them a screen door which was not mentioned in the statement of claim, some linen, some under-clothing and a silver butter-knife. The total value of all these articles according to the evidence, was some relatively trifling sum,—perhaps $60. Their loss was discovered almost immediately after the servants left and was reported immediately. In the circumstances we think the evidence on the subject was likewise for the jury in connection with the evidence concerning the rings.

The judgment is reversed and the record is remitted with instructions to enter judgment on the verdict.

This opinion was written by Judge LINN prior to his appointment to the Supreme Court, and has been adopted as the opinion of this court. F. M. TREXLER, P. J.