From Joseph H. Goldstein, Warren.

## Gold, Admx., v. Commercial Casualty Insurance Co.

*A. L. Moise*, for plaintiff.

*Herman & Harris*, for defendant.

GLASS, J., February 4, 1936.—This is an action on a residence theft policy of insurance tried by a judge without a jury. On January 6, 1933, defendant, Commercial Casualty Insurance Company, issued to Morris Gold, now deceased, its policy of insurance no. BT21455, in the sum of $1,000, insuring him to the amount of $500 thereof for loss by burglary, robbery, theft or larceny of, inter alia, "watches . . . precious and semi-precious stones, jewelry . . . owned by the Assured, or by any permanent member of the household of the Assured, who does not pay

board or rent," for the term of one year beginning January 6, 1933. By a renewal certificate issued by the company the term was extended to January 6, 1935.

Morris Gold, the assured, died on July 27, 1934. Sometime between the date of his death and August 4, 1934, certain articles of jewelry, consisting of two men's gold watches and chains and a gold signet ring, which had belonged to him, a lady's gold watch and chain and a lady's yellow gold diamond ring, which belonged to Bessie Gold, his wife, and a lady's gold wrist watch, which belonged to Mollie Gold, one of his daughters, were stolen from the premises where the assured and his wife and two daughters had been residing. Immediately upon ascertainment of the loss, plaintiff gave or caused to be given notice thereof to the police authorities of the City of Philadelphia and to defendant, at its principal office in Philadelphia. Proofs of loss were duly filed with the company as provided in the policy. On February 25, 1935, letters of administration upon the estate of Morris Gold were granted to Rae L. Gold, daughter of the assured, plaintiff herein. Upon refusal of the defendant company to make payment after due demand made upon it, suit was instituted.

Two defenses were interposed: (1) That there was no proof of larceny or theft; and (2) that if there was a theft it occurred after the death of the assured, and that the policy was terminated upon his death and was therefore not in force thereafter.

The testimony of plaintiff's witnesses was to the effect that the jewelry in question was kept in a velvet bag which had been deposited in a chifforobe in a bedroom on the second floor of the premises occupied by the family, and that it was stolen by someone who visited the house during the period of mourning following the decease of the assured. The jewelry was described with minute detail by the two daughters of the deceased and other witnesses.

Rae L. Gold testified that the jewelry was kept in a velvet bag which had been placed in the bottom of the

wardrobe in the front bedroom of the second floor; that it was there in the first part of July 1934; that the last time she saw it was about two weeks prior to the death of her father; that after the father's death, in conformity with their religious belief, they sat in mourning for their father and did not make any search for the jewelry during that time; that after the mourning period was over they searched the entire house for it and could not find it; that they then immediately notified the police authorities and gave notice to the insurance company. The testimony of Mollie Gold was substantially to the same effect.

Nathan Simon, a witness for plaintiff, testified to the market value of the jewelry in question, which had been minutely described.

John J. Devine, an employe of and witness for defendant, testified that after his office had received notice of the loss he visited the home of the assured at 312 Mifflin Street; that he was shown the chifforobe wherein the bag of jewelry was kept; that he asked the daughters to describe it to him, and they did so; that he then inquired of them if they had any suspicions of anyone who had visited them having taken the articles, and they replied in the negative, but stated that there had been numerous people coming in and out of the house during the period of mourning and that they "didn't know it was gone until —I think it was the fifth or sixth day afterwards."

There is ample testimony to justify a finding that the jewelry for the loss of which suit was brought was stolen from the premises then occupied by the assured and his family. We can dispose of the first defense raised upon the authority of Hamill v. Fidelity & Casualty Co. of N. Y., 104 Pa. Superior Ct. 602 (1932), in which case, in a very exhaustive opinion on the subject by Judge (now Justice) Linn, the right to recover was upheld. In that case suit was brought to recover the value of certain rings alleged to have been stolen. Plaintiff in that case testified that the rings were in a small white bag, and that she placed the bag in a wall safe; that she later opened the

safe and that some of the contents fell on the floor; that she picked up several things and thought that she had picked up everything. Plaintiff further testified that subsequent thereto she left the house in charge of servants for a period of days, and that when she returned she was unable to find the articles. There was evidence that other articles of personal property were also missing. The court there said: "In the circumstances we think the evidence on the subject was likewise for the jury in connection with the evidence concerning the rings." See also Perry v. Southern Surety Co., 78 Pa. Superior Ct. 222; Hubbard v. Globe Indemnity Co., 87 Pa. Superior Ct. 483; Miller v. Massachusetts Bonding & Ins. Co., 247 Pa. 182; Green et ux. v. Metropolitan Casualty Ins. Co. of N. Y., 100 Pa. Superior Ct. 274.

We are not in accord with the proposition of law advanced by defendant that the contract of insurance terminated upon the death of the assured. We hold that the policy of insurance in question was not terminated by the death of the assured, particularly in the absence therein of an express provision to that effect. A careful reading of the policy reveals that there are no provisions which provide for the termination of the term either upon the death of the assured or under other contingencies. In reading the policy we must consider and give effect to every provision thereof so that it may receive a reasonable construction in view of the intent of the parties. In Hubbard v. Globe Indemnity Co., supra, the court said:

"It is a familiar principle that insurance policies should have a reasonable construction in view of the intent of the parties, regard being had to the nature and situation of the thing insured, and as the policy of insurance is the language of the company insuring, if there be any ambiguity, it is taken most strongly against the insurer, and if reasonably susceptible of two interpretations, it is to be construed in favor of the insured so as not to defeat without necessity his claim to indemnity."

The policy under which suit was brought in this case is a term policy. There is no provision as to termination thereof in any contingency. Upon that point the policy is silent. One provision reads as follows: "Assignment. P. No assignment of interest under this Policy shall bind the Company unless its consent shall be endorsed hereon." There is nothing in the testimony to indicate that there was any assignment of interest; the assured in his lifetime did not assign his interest in the policy to anyone. That is what that provision means. It is the only fair interpretation that can be given to it.

We must adopt the construction most favorable to the assured. As was said in 1 Joyce on the Law of Ins. (2d ed.) sec. 211:

"The construction of policies of insurance must not be that which would lead to an absurdity, but must be reasonable with reference to the risk and subject-matter, and purposes of the entire contract, so as not to defeat the intention of parties, and if one interpretation of a contract of insurance capable of two interpretations would lead to an absurd conclusion, looking to the other provisions of the contract and its general scope and object, such interpretation must be abandoned and that adopted which will be more consistent with reason and probability."

To give force and effect to the contention of defendant would be to work a forfeiture of the policy because of an act (death) for which the assured is not responsible and which is in no way his fault. That would be "unjust and inequitable". We can say here, as was well said in The Forest City Ins. Co. v. Hardesty, Admr., 182 Ill. 39, 46, that if a forfeiture is to be worked it should be for an act which is within his control. Nothing in the testimony in this case would indicate "that the death, which caused the change of title, was the result of suicide, or of any improper conduct on the part of the assured."

If defendant intended that the contract of insurance was to terminate upon the death of the assured, it should have so provided. It failed to do so. We cannot read into

the policy that which does not appear therein, and we cannot put such a construction upon the provisions thereof as will work a forfeiture. We must view the contract of insurance in the light most favorable to the assured, since, as has been said in Brams v. New York Life Ins. Co., 299 Pa. 11, "if possible, in such cases, an interpretation which would work a forfeiture must be avoided: Stipcich v. Metropolitan Life Ins. Co., 277 U. S. 311; McMaster v. New York Life Ins. Co., 183 U. S. 25". In Norlund v. Reliance Life Ins. Co., 282 Pa. 389, it was held: "An insurance contract must be construed favorably to the insured and all doubts resolved in his favor." To the same effect is the statement in 1 C. J. 414. This is upon the principle that as the insurance company prepares the contract and embodies in it such conditions as it thinks proper it is in duty bound to use language so plain and clear that the insured cannot mistake or be misled as to the burden and duties imposed upon him.

As already indicated, there was no termination of the contract of insurance by the death of the assured. In 6 Couch Encyclopedia of Insurance Law 4871, sec. 1351, it is stated:

"Termination by actual loss or death . . . the authorities are agreed that a policy of insurance on property is not terminated by the death of the insured, in the absence of an express provision to that effect in the policy, the usual ground for the decision being that, since insurance policies usually contain explicit provisions as to termination or forfeiture, no additional grounds therefor will be implied or read into the contract."

To the same effect is footnote II in 16 A. L. R. 310.

In The Forest City Ins. Co. v. Hardesty, Admr., supra, it was held that the change of title by the death of the assured before loss (fire) does not work a forfeiture.

In Georgia Home Ins. Co. v. Kinnier's Admx., 69 Va. 88, 92, the court, in speaking of the provision in the policy that if "the policy is assigned without written permission hereon, the policy shall be void", said that the change

interdicted by the condition was not intended to include devolution of title upon the heirs by the death of the assured. The change of title provided against in the condition must have been intended to mean a voluntary disposition or alienation of the property.

In Burbank, Admr., v. Rockingham Mutual Fire Ins. Co., 24 N. H. 550, 558, the court said:

"As understood at common law, to alienate real estate is voluntarily to part with the ownership to it, either by bargain and sale, or by some conveyance, or by gift or will."

The court in that case held that the death of the assured intestate did not work an alienation in the property, and that the policy did not thereupon become void.

In Forest City Ins. Co. v. Eaton, Admx., etc., 86 Ill. App. 463, it was held that the death of the assured before loss does not work a forfeiture of a fire insurance policy under a condition that it shall be void if any change takes place in the title or possession of the property insured.

In Richardson's Admr. v. German Insurance Company of Freeport, 89 Ky. 571, the court held that the policy of insurance did not become void upon the death of the assured in the absence of a specific provision in the policy for a forfeiture.

We have carefully considered the authorities cited by counsel for defendant in support of its position that the instant contract was terminated upon the death of the assured and find that the decisions rested on the particular conditions in the policy and the facts of the case. In the case of Miller et al. v. The German Insurance Company of Freeport, 54 Ill. App. 53, called to our attention and cited for the proposition that the death of the insured effected such a change of title to the property as operated to forfeit the policy, the policy contained this provision:

*"When property insured by this policy or any part thereof shall be alienated, or shall in any manner become incumbered, or in case of a change of title to the property insured, or any part thereof, or of any interest therein,*

*without the consent of the company indorsed thereon,*
*. . . this policy shall at once cease to be binding upon this*
*company."*

The court held:

"The death of the assured intestate did not operate as
an 'alienation' of the property insured. Usually that term
applies to lands or some interest therein. . . . To alienate
is to voluntarily part with the ownership by bargain and
sale, or by gift or will. 'Property not transferred or de-
vised is not alienated according to the principle of the
common law.' Burbank, Admr., v. R. M. F. Ins. Co.,
24 N. H. 550."

On page 57 the court uses this language, which is per-
tinent here:

"To so contract that the policy ceases to operate as an
indemnity immediately upon the death of the insured,
with the company retaining the premium paid for carry-
ing the risk, would certainly be unjust and work a great
hardship, if loss should occur before there was opportu-
nity given to renew the insurance after burying the dead.

"Those insured evidently do not contemplate such re-
sults or such practice."

In the case of Hine v. Woolworth, Receiver, etc., 93
N. Y. 75, the fire insurance policy contained a condition
that if the property insured should be sold or conveyed, or
the interest of the insured therein changed in any man-
ner, "whether by act of the insured or by operation of
law", the policy should be void until the written consent
of the company was obtained. The court found that
Brouillet died intestate, and that thereafter the building
insured was destroyed by fire, and held that there was a
change of interest upon the death of the insured within
the meaning of the policy, which avoided it. Prior to the
death of the insured, the company became insolvent, and
a receiver of its assets was appointed. The insured died
on March 2, 1878, and the fire loss occurred April 17,
1878. There was no effort to obtain consent by the re-
ceiver from the company, and the court uses this lan-

guage, which we think is decisive and distinguishes the case:

"Therefore, when Brouillet died and the title to the property was transferred to his heirs there was such a change of interest as avoided the policy until the consent of the company should be obtained. That was not obtained, and there was no effort made to obtain it."

It would seem that if an effort had been made to obtain the consent of the company immediately after the death the policy would have been held to be effective and in force.

In the case of Goldstock v. Fidelity Deposit Co. of Md., 201 App. Div. 816, 195 N. Y. Supp. 94, cited by defendant in support of its position that the policy was not in force after the death of the assured, the court said:

"We think that the language of the policy and the nature of the contract justify the conclusion that the defendant intended to insure only such articles as were in the possession of members of the household of Hyman Goldstock while he was alive and occupied the house at 324 Summit Avenue. Lena Goldstock, under the terms of the policy, was insured against loss only during the time when she answered the description of a 'relative of the assured permanently residing with the assured.' We do not think that, after the death of her husband, she continued to be such a relative. Moreover, the felonious abstraction insured against was abstraction only from a building 'actually occupied by the assured.' There was no such abstraction in this case."

It would seem that the court decided that case upon the theory that there must be an actual occupation of the house by the assured. This being impossible after the death of the assured, no recovery was allowed.

As we have already indicated, in those decisions which did not allow recovery on policies of insurance after the death of the assured, the policies in question contained provisions that they should be void if, without the written

consent of the company first had and obtained, the said "property insured should be sold or conveyed, or if the interest of the insured therein should be changed in any manner, whether by act of the insured or by operation of law": Hine v. Woolworth, Receiver, etc., supra. We have no such contract in the instant case.

We find that there was a theft of the property covered by the policy in this case, and that the value of the jewelry so covered is $350. Under all the law and the evidence the court finds for plaintiff in the sum of $350, together with interest from September 24, 1934, $28.56, or a total of $378.56.